The Commercial Bank of Buffalo *v.* Sparrow.

---

THE COMMERCIAL BANK OF BUFFALO *vs.* SPARROW and CLARK.

The provision in the bank suspension act of 1837, reducing and limiting the circulation of the banks, *alters* their several charters, and is inoperative and void because the act was not passed by a constitutional majority.

Such alterations require a vote of two-thirds of all the members even where a power is reserved in the act of incorporation to *alter, modify or repeal* the law.

A *profert* in pleading is only required in the cases where *oyer* can be demanded : it is therefore unnecessary in setting forth the records and proceedings of courts, with the exception of letters testamentary and of administration.

A *profert* is necessary in pleading instruments under seal, and the want of it is fatal on special demurrer.

A record need not be referred to in pleading with a *prout patet per recordum* where it is only inducement, but only where it is the *gist* of the pleading.

A *protestando* however idle, repugnant or inconsistent, is mere surplusage and does not vitiate the pleading.

A replication in *avoidance* of a plea must admit the matters pleaded.

DEMURRER. The declaration contained the common money counts in assumpsit and claimed damages to $5000. Sparrow pleaded, 1. *Non assumpsit :* 2. *Non assumpsit,* as to all the damages except $2500, and as to that sum that the plaintiff was a banking corporation, created by an act of the legislature passed

April 26th, 1834, with a capital of $400,000, and was made subject to the provisions of the safety fund act; and that afterwards, to wit, on the 16th day of May, 1837, an act of the legislature was passed entitled, " an act suspending for a limited time certain provisions of law, and for other purposes," by which it was provided that the amount of bills issued and in circulation of the several banks of this state having capitals amounting to $400,000 should not thereafter exceed the amount of $300,000 respectively; that after the last mentioned act took effect as a law, to wit, &c. the plaintiff had issued and had in circulation bills of that corporation to an amount exceeding $300,000, and that after such amount of bills had been issued and while they were in circulation, the plaintiff well knowing the same, did corruptly, &c. issue to the defendant and put in circulation other circulating bills of the plaintiff over and above the amount then in circulation to the amount of $2500, which the defendant then received, which said corrupt and illegal issuing and putting in circulation of said bills was the sole consideration for the promise of the defendant to pay the said sum of $2500 parcel &c. Verification. 3. Like the second except that it omits the distinct averments of the act incorporating the plaintiff, and of the act limiting the circulation, the plea assuming them to be public statutes. 4. Like the second except that instead of the averment that the excessive issue of bills was to the defendant, it states an illegal agreement between the plaintiff and defendant to issue them and then avers that the plaintiff did issue the $2500 of its circulating notes, over and above, &c. which were pursuant to the illegal agreement paid, laid out, &c. as in the declaration mentioned. The plaintiff demurred to the 2d, 3d and 4th pleas of Sparrow, who joined in demurrer.

Clark pleaded, 1st. *Non assumpsit*; 2d. A set-off of a large sum, to wit, $5000 money had and received by the plaintiff to the defendant's use, praying judgment for the balance &c. 3. That the defendant Clark is sued as a several endorser of a note for $2500 made by Sparrow, pursuant to the act entitled " an act regulating suits on bills of exchange;" then averring a

set-off as in this defendant's second plea. 4th, 5th and 6th, in substance like the 2d, 3d and 4th pleas of Sparrow, stating the illegal agreement to have been made with, and that the excessive circulation was issued to or for the use of Sparrow, and that Clark is sued as endorser of the note made by Sparrow therefor. The plaintiff *replied* to Clark's 2d and 3d pleas, (of set-off,) protesting the debt sought to be set off, and averring that the plaintiff is a banking corporation created by the act of April 26th, 1834; that its capital was paid in and it continued in business until November 13th, 1841, when, it having become insolvent and been guilty of divers violations of law, and subjected itself to forfeiture, the then bank commissioners, on behalf of the state, filed a bill in the court of chancery before the chancellor, alleging that the bank had issued and had in circulation bills to a greater amount than $300,000, and had been guilty of other violations of law, which are specified in the replication, and prayed an injunction restraining the plaintiff from exercising its powers, &c. and for the appointment of a receiver; that an injunction was ordered and was accordingly issued, and that it was duly served on the 15th day of November, 1841, and that such further proceedings were had, that afterwards on the 21st day of January, 1842, a receiver was appointed with the usual powers, who, on the 25th day of the same month entered upon his duties and took into his possession the property and effects of the bank, the same being vested in him by his appointment pursuant to the acts of the legislature, *and by an assignment in writing executed* by order of the court of chancery by the officers of the bank; that at the time of filing the bill the plaintiff was, and ever since had been insolvent, and its effects since the assignment have been in the hands of the receiver for the benefit of its creditors; that the injunction has been continued and is still in force, and the bank has not since it was issued done any business; that this suit was commenced on the 25th day of January, 1843, by the receiver for his benefit as such receiver in the execution of his duties; that the indebtedness set forth in the 2d and 3d pleas and which is attempted to be set off, arose since the time

of the failure of the plaintiff and since the proceedings in the court of chancery and the appointment of the receiver, and which said indebtedness, "if it exists at all," consists wholly in the circulating bills or notes issued by the plaintiff while doing business, and which were purchased or obtained after the said failure and after the appointment of the receiver, and that such failure and appointment and the proceedings in chancery were well known to the defendant at the time the same took place. Verification. To this replication Clark demurred, assigning the causes of demurrer referred to in the opinion of the court, and the plaintiff demurred to the 4th, 5th and 6th pleas of Clark. Joinders.

*M. Fillmore*, for the plaintiff, insisted that the alleged over-issues did not invalidate notes taken for loans of the bills so issued. He maintained, moreover, that the third section of the *suspension act (Stat.* 1837, *p.* 515,) was void on account of the act not having passed by a constitutional majority.

*J. L. Talcott*, for the defendant, contended that the facts stated in the pleas, if true, shewed a perfect defence. The moneys were advanced to the defendant Sparrow under an illegal contract, to which Clark became a party as endorser, and it is well settled that an action founded upon such a contract cannot be sustained. The suspension act, he said, was duly passed and effectually limited the circulation of the banks. The demurrer to the replication, he insisted, was well taken. 1. The replication does not show that "The Commercial Bank of Buffalo" was duly organized as a corporation; 2. It does not contain any *profert* of the proceedings in chancery; 3. The *protestando* is repugnant and vitiates the pleading; 4. There is no *profert* of the assignment to the receiver; 5. The replication does not *confess* the facts which it seeks to avoid by the introduction of new matter.

*By the Court*, BEARDSLEY, J. The *second, third* and *fourth* pleas of Sparrow, and the *fourth, fifth* and *sixth* of Clark, are

alike in principle, and may be disposed of on one and the same ground.

By the act to incorporate the plaintiff as a banking corporation, its capital stock was to be four hundred thousand dollars, and the act declared that it should "not be lawful for said corporation to issue, or to have outstanding or in circulation at any time, an amount of notes or bills loaned or put in circulation as money, exceeding once and an half its capital stock then paid in and actually possessed." (*Laws* 1834, *p.* 260. §§ 6, 36.) Under this act the issues and circulation of the plaintiff might amount to six hundred thousand dollars, a sum which it is not alleged by either of the pleas has been at any time transcended. Indeed, unless some other and still greater restriction upon the amount of issues than is found in the original act of incorporation, was subsequently imposed on the plaintiff, it will not be pretended by any one that the matters pleaded constitute any thing like a defence to the action.

The act of incorporation contains this clause : " The legislature may at any time alter, modify or repeal this act, or any of its provisions." (§ 37 *and see* 1 *R. S.* 600, § 8.) On the sixteenth of May, 1837, "an act suspending for a limited time certain provisions of law, and for other purposes," was passed, the *third* section of which declares that "the amount of notes or bills issued and in circulation of the several banks of this state, shall not hereafter exceed the following amounts respectively :"—" those having capitals to the amount of four hundred thousand dollars, three hundred thousand dollars." (*Laws* 1837, *p.* 515.) By the *tenth* section, this provision was to continue in force until repealed, which, I believe, has not yet taken place.

The act of 1837 was passed as a majority bill, and did not receive the assent of two-thirds of the members of the legislature. This is ascertained by an inspection of the original act in the office of the secretary of state. (*De Bow* v. *The People*, 1 *Denio*, 11.) The question and the only one on this part of the case, therefore, is, whether the restriction which the act in terms imposed on the plaintiff, reducing the amount to which its issues

might be extended from six to three hundred thousand dollars, was a legal enactment under the constitution.

By the constitution " the assent of two-thirds of the members elected to each branch of the legislature, shall be requisite to every bill" " creating, continuing, altering or renewing any body politic or corporate." (*Art.* 7, § 9.) The plaintiff was a body corporate—a point which I suppose will be conceded—and is therefore as plainly as language can make any thing, within this clause of the constitution. Cutting down the power of this corporation to issue bills, from six to three hundred thousand dollars, was certainly, "altering" it. In principle it was like increasing its capital, changing its location, or reducing the term of time which it might by its charter continue to exist, either of which would work a plain alteration or change in the corporation. But the legislature cannot pass a bill which shall have the effect of "*altering*" a body corporate, by a simple majority of each house. The assent of two-thirds of the members is requisite for this purpose. This bill was not passed by two-thirds, and therefore not in conformity with this clause of the constitution. As to other matters the act may be valid; but not having received the assent of two-thirds of the members, I think this clause was wholly void. I can hardly see that the point could be made more plain by any explanation whatever. It seems to me obvious at first view that this enactment was not passed as the constitution requires; and if so it could be of no effect whatever. I will not dwell on a proposition so plain: in my estimation its force would only be weakened by discussion.

It was said truly on the argument, that the legislature had reserved in express terms the power to "*alter*" the charter of this corporation; (§ 37, *supra;*) but it does not follow, as was urged, that this might be done by a mere majority vote. The legislature did not, as I conceive, attempt to acquire any new power by this reservation, but simply to retain that which they then had. The power to alter as well as that to create corporations, is conferred by the constitution, but can only be exerted by the concurrence and assent of two-thirds of the members. In this manner the plaintiff was brought into being as a body

corporate, and under the constitution, no bill " *altering*" such body corporate would be valid unless passed in the same way. As a charter, when granted, was assumed to be a contract, the obligation of which could not be impaired by legislation, it became necessary to reserve in the charter a right to alter, modify or repeal it, or it was supposed the power could not be exerted by the legislature in any form. For this purpose a reservation of that right was made part of this charter; the clause however was not inserted with a view to confer any new power, but simply to retain a right to exert that which the legislature then had.

Whatever may be the extent and character of the various powers possessed by the legislature of this state, they are derived from and exist in virtue of the state or federal constitution. Legislation can add nothing to those powers, nor can it abridge them. It would indeed be clearly absurd in reason, as it would also be a gross heresy in politics, to hold that a legislature or any other public body could in any manner augment their own powers. But the legislature of this state are not obnoxious to such a charge for inserting in the plaintiff's charter a right to "alter, modify or repeal" it at any time. It was plainly intended not to enlarge the legislative power, but to retain in active existence that which they then held under the constitution. The act of 1837 not imposing any valid restriction upon the issues of the plaintiff, it follows that the pleas founded on that act are bad in substance.

The defendant Clark put in two pleas of set-off, which the plaintiff answered by a single replication. No objection was made to either of these pleas: they were therefore virtually conceded to be good both in substance and form. On this branch of the case the only question is as to the sufficiency of the replication.

Various objections were made to the replication, some of which are specially stated in the demurrer and others are not.

1. It is said the replication does not show that the plaintiff was duly organized as a banking institution. This objection

cannot be sustained in point of fact; in this particular the replication is very full and complete.

2. That the "replication contains no *profert* or reference to the record" of the proceedings in chancery. This is understood as an objection to the form in which these proceedings are pleaded, and not to their substance and effect. But the acts and proceedings of a court, with the exception of letters testamentary and letters of administration, are never pleaded with a *profert in curiam.* A profert is only required where oyer may be demanded; but oyer of records and proceedings in the nature of records, with the above exceptions, cannot be demanded. (1 *Chit. Pl. 7th Am. ed.* 397 to 399, 464, 5; *Steph. Pl. 4th Am. ed.* 61 to 72, 437 to 440.)

If the objection that no *reference* is made to the record and proceedings in chancery, means that they are not pleaded with a *prout patet per recordum*, it would be sufficient to say that this supposed imperfection is not "specially expressed in the demurrer," as the statute requires. (2 *R. S.* 352, § 4.) But if these proceedings could be regarded as matters of record, it was unnecessary to plead them in this form. They are not the foundation of the action, or of the right which the replication asserts. Of themselves they cannot bar the set-off, although when combined with other matters such may be their conjoint effect. The *gist* of the replication is that the notes which constitute the set-off were transferred to the defendant after the cause of action for which this suit was prosecuted, had vested in the receiver, and to this the chancery proceedings were but inducement. When an action is brought for a false return to an execution, or for an escape from final process, the judgment and such process must be alleged in the declaration, but they are only inducement and there is no occasion to refer to them by a *prout patet per recordum.* Where the record is the ground of the action or of the right set up, this averment is proper; but "it is fully established," said Ch. J. Abbott, "by the passage referred to in *Co. Litt.* 303, *a.*, and the case of *Wate* v. *Briggs*, that where a matter of record is insisted upon only by way of inducement, and not as the very foundation of

the action, the party insisting upon it need not conclude *prout patet per recordum.*" (*Stoddart* v. *Palmer*, 3 *Barn. & Cress.* 2; see also *Wate* v. *Briggs,* 1 *Ld. Raym.* 35; *Morse* v. *James Willes*, 127; 1 *Chit. Pl.* 404, 590, 1; 2 *id.* 417, *and note*, 420 *and note.*) I think it would be found on examination that proceedings in chancery are never stated in this form; and that the averment is only necessary in such pleadings as should conclude with a verification by the record, and to which *nul tiel record* may be answered. But these questions need not now be examined, as a sufficient answer to the objection has already been given.

3. The *protestando* is said to vitiate the replication. But although it may be idle, repugnant or inconsistent, it cannot affect the pleading. As to this suit the *protestando* is a nullity, and whether good or bad, it may be rejected as surplusage which cannot vitiate. (1 *Chit. Pl.* 651, 262; 2 *Saund.* 103, *a*, note; *Com. Dig. Pleader, N.; Grannis* v. *Clark*, 8 *Cowen*, 42.)

4. The plaintiff seeks to bar the set-off by showing that before it accrued in favor of the defendant, Clark, the property and effects of the plaintiff, including the right of action in this case, were vested in the receiver as well by virtue of "an assignment in writing" as by the proceedings in chancery. But the replication does not show when or by whom in particular this assignment was made. It must have been under seal, but no *profert* is made which is specially stated as cause of demurrer. The assignment is not well pleaded and the replication is bad. (1 *Chit. Pl.* 397, 8.)

5. The replication is in *avoidance* of the pleas, new facts being for this purpose alleged; but it is objected that the truth of the matters pleaded by the defendant is not admitted, for which cause the replication is vicious.

It is an established rule, applicable to pleas in bar and all subsequent pleadings, that where new facts are introduced in avoidance of the pleading answered, the truth of the matters so answered must be admitted. A party may traverse what his adversary has alleged, or he may set up new matter in avoidance; but he cannot do both in the same pleading; and if new

matters are relied upon the truth of the pleading answered must be conceded. (1 *Ch. Pl.* 556, 565, 610, 680, 6, 9 ; *Steph. Pl.* 52, 138.) "If a pleading, therefore, purporting to be by way of confession and avoidance, (or in other words, not pleaded by way of traverse,) does not import a confession of the adverse allegation, it is defective and insufficient." (*Id.* 200.)

In this case the pleas set up that the plaintiff owed a large sum to the defendant, Clark, which he was ready and willing to set off and allow in satisfaction of the plaintiff's demand To avoid this bar to the action the plaintiff introduces new facts which, if well pleaded, may perhaps attain the object ; but in doing so the plaintiff was bound to admit the indebted-ness as pleaded. This was not done unless an allegation in the replication " that such pretended indebtedness, *if it exists at all,*" amounts to such an admission, and that it does not has been repeatedly adjudged in the English courts. Indeed, it seems to be entirely settled in all their courts, that this hypo-thetical form of admission is not sufficient. (*Griffiths* v. *Eyles,* 1 *B. & P.* 413, 418 ; *Gould* v. *Lasbury,* 1 *C. M. & R.* 254 ; *Eavestaff* v. *Russell,* 10 *Mees. & Wels.* 365 ; *New-York Legal Observer,* 1 vol. 239 ; *Margetts* v. *Bays,* 4 *Adol. & Ellis,* 489 ; *McPherson* v. *Daniels,* 10 *B. & C.* 263 ; 1 *Ch. Pl.* 272, 556 ; *Steph. Pl.* 200.)(a)   A precedent for a plea in this form may be found in some of the late editions of *Chitty on Pleading ;* (3d vol. 941, 7th *Am. from* 6th *Lond. ed.*) although it was otherwise in earlier editions. (3d vol. 941, 5th *Am. from* 4th *Lond. ed.*)  But this form of pleading is against principle and authority and cannot be sustained.

An objection was made in the demurrer that the replication does not show the receiver to have been duly appointed by the court of chancery, so as to vest the estate and effects of the plaintiff in him. But the point was not discussed on the argument nor was any reference made to the various statutes touching the appointment and the powers of such receivers, and the right of set-off as against them. It may be inferred from this

(a) See *Conger* v. *Johnston,* (*ante, p.* 96.)

that both sides regarded this point as abandoned, and it has not been examined.

Some other and formal objections were taken, but none which in my opinion are available, or which require particular notice.

The plaintiff is entitled to judgment on the demurrers to the *second*, *third* and *fourth* pleas of Sparrow, and the *fourth*, *fifth* and *sixth* pleas of Clark; and the defendant, Clark, on the demurrer to the replication to his *second* and *third* pleas.

<div align="right">

Judgment accordingly.