UNION BANK OF RICHMOND, VA., v. COMMISSIONERS
OF OXFORD.

*Invalid Statute—Constitutionality of Statute Authorizing Levying of Taxes—Mandatory Requirements of Constitution as to Passage of Statutes—Consent Judgment Against Municipality—*Ultra Vires.

1. Section 14, Article 2, of the Constitution, providing that "no law shall be passed to raise money on the credit of the State, or to pledge the faith of the State, directly or indirectly, for the payment of any debt, or to impose any tax upon the people of the State, or to allow the counties, cities or towns to do so, unless the bill for the purpose shall have been read three several times in each house of the General Assembly and passed three several readings, which readings shall have been on three different days, and agreed to by each House respectively, and *unless the yeas and nays*, on the second and third reading of the bill, shall have been *entered on the Journal*," is mandatory and not recommendatory merely.

2. Where the Journal of the General Assembly shows affirmatively that an act authorizing the creation of an indebtedness, or the imposition of a tax by the State, or any county, city or town, was not passed with the formalities required by Section 14, Article 2, of the Constitution, such Journal is conclusive as against not only a printed statute published by authority of law, but also against a duly enrolled act, and is invalid so far as it attempts to confer the power of creating a debt or levying a tax. (*Carr* v. *Coke,* 116 N. C., 223 distinguished.)

3. A consent judgment rendered against a municipality for a subscription to a railroad company is *ultra vires* and void when the act of the General Assembly authorizing the subscription was not passed as required by Section 14, Article 2 of the Constitution.

4. It is incumbent upon purchasers of bonds of the State, and of counties, cities or towns, to ascertain whether the power to issue them has been granted according to the requirements of the Constitution.

FAIRCLOTH C. J., dissents.

CIVIL ACTION, tried at November Term, 1895, of GRAN-VILLE Superior Court, before *Starbuck, J.*, and a jury. (The nature of the action and pleadings may be ascertained by reference to the report of the case between the same parties as contained in 116 N. C., 339.)

The following issues were made up under the direction of the court and submitted to the jury, to-wit:

" 1. Is the plaintiff a corporation duly organized and existing under the laws of Virginia, having power to engage in a general banking business, and to purchase bonds and other instruments?

" 2. Did the Board of Commissioners of Oxford have lawful authority to issue the bonds and coupons sued on in the complaint?

" 3. Did the plaintiff, before bringing this action, make presentation of the interest coupons sued upon, and demand payment thereof from the Treasurer of the town of Oxford, at his office in Oxford, and was payment refused?

" 4. Is plaintiff the owner of the bonds and coupons sued on, and did it purchase the bonds for a valuable consideration and in good faith, without notice?

" 5. Did the Oxford and Coast Line Railroad Company tender to the defendant the release provided for and directed by the judgment rendered at July Term, 1892, and if so, when?

" 6. Was any demand ever made by defendant upon said railroad company to execute said release ? "

Upon the trial the defendant consented that the jury should answer the first and third issues submitted to them " Yes," the fifth issue submitted to them " Yes," on December 3, 1894 ; and on the sixth issue submitted to them, " No."

" *Exception* 2.—As to the other issues submitted to the jury, the plaintiff offered in evidence Chapter 315 of the Acts of 1891 (being the charter of the Oxford and Coast Line Railroad Company) ; this evidence was objected to by the defendant as incompetent, irrelevant and immaterial, in so far as it was offered to prove that the Board of Commissioners of Oxford had power to hold the election mentioned in the pleadings, and to issue the bonds and coupons sued on. The objection was overruled by the court, and the evidence admitted, and the defendant excepted.

" *Exception* 3.—The plaintiff also offered in evidence Chapter 21 of the Private Acts of 1885 (being the charter of the town of Oxford). This evidence was also objected to by the defendant as incompetent, irrelevant and immaterial, in so far as it was offered to prove that the Board of Commissioners of Oxford had power to order or hold said election, or to issue said bonds and coupons."

The objection was overruled by the court, and the evidence admitted, and defendants excepted.

" *Exception* 4.—The plaintiff also offered in evidence the following proceedings of the Board of Commissioners, as appearing in the minutes: Proceedings March 9, 1891, (petition to provide for an election); proceedings March 14, 1891 (ordering an election to be held May 25, 1891) ; proceedings March 24, 1891 (changing the time for holding said election to April 27, 1891); notice of election on ques-

tion of issuing bonds to amount of $40,000 to subscribe to capital stock of Oxford and Coast Line Railroad Company, proceedings April 19, 1892 (being resolution reciting election held, and ordering issuing of $40,000 of bonds). Proceedings August 30, 1892 (being order spreading on record receipt from Oxford and Coast Line Railroad Company for $20,000 of bonds, issued pursuant to judgment, July Term, 1862; and resolution of the Board of Commissioners), proceedings March 16, 1893 (being order directed to be issued on Treasurer to pay $600 on coupons). All said evidence was objected to by defendant as incompetent, irrelevant and immaterial in so far as it was offered to prove that said Board of Commissioners had any power to order or hold said election, or to issue said bonds and coupons."

The objection was overruled, and the evidence admitted, and defendants excepted.

The plaintiff also offered in evidence the record of the judgment and other proceedings in the cases (consolidated) of the Oxford and Coast Line Railroad Company and J. T. Pruden against the Board of Commissioners of Oxford and A. A. Hicks, mayor, mentioned and referred to in the pleadings, and the agreement in said judgment referred to.

The plaintiff introduced A. L. Boulware, as a witness on behalf of plaintiff, who testified that he resided in Richmond, Va.; was president of the Union Bank of Richmond; that said bank has owned the bonds described in the complaint, and shown to him since September, 1892; that the said bank paid 97½ cents on the dollar for them; that first coupons of February, 1893, were paid, but no others.

The witness Boulware was recalled, and testified that plaintiff had no notice of anything except the matters recited in the bonds.

The defendant offered in evidence the printed Journal of the House of Representatves of the General Assem-

bly of the State of North Carolina, at its session of 1891, especially pages 324, 641, 709, 924, and 926, and also the printed Journal of the Senate of the General Assembly of the State of North Carolina, at its session of 1891, especially pages 647, 742, 745, 759 and 798.

This evidence was offered for the purpose of showing that Chapter 315 of the Acts of 1891, (entitled " An Act to incorporate the Oxford and Coast Line Railroad Company, ") if construed and used as conferring upon the Board of Commissioners of Oxford, or any other municipality, authority to issue bonds to aid in building the Oxford and Coast Line Railroad, or to issue bonds for any other purpose, then it was not passed in conformity with the requirements of Article II., Section 14 of the Constitution of North Carolina, and in so far as it does give such authority it is unconstitutional and void, though in other respects good, in as much as said act in the said House of Representatives did not pass three several readings on three different days, but the second and third readings on the same day, nor were the yeas and nays, if any, on the second and third readings, or any other reading, in said House of Representatives entered on the Journal.

The plaintiff objected to the evidence, not on the ground of incompetency as to the mode of proof in the use of the printed instead of the certified copies thereof, but on the ground of incompetency and irrelevancy and immateriality of the proof itself, and that the ratification of the act is conclusive, and the legal effect of the act is not dependent upon the manner of its passage, and that plaintiff cannot be compelled to look behind the act as published ; and also upon the ground that the Supreme Court of North Carolina has held that the town of Oxford was authorized by

said Chapter 315, Laws of 1891, to issue bonds ; and on the ground that the Journal was offered to attack the ratification, though defendant disclaimed such purpose.

The objection was overruled, and the evidence admitted, and plaintiff excepted.

It appeared by said House Journal that said act, Ch. 315 of the Laws, 1891, passed its second and third readings in the House of Representatives on one and the same day, and that the yeas and nays, if any, were not entered on the Journal. Defendant's counsel stated they had certified copies from the Secretary of State of the pertinent parts of the Journals, but their production was waived.

His Honor charged the jury that if they believed the evidence they should answer the sixth issue "No" and all the other issues "Yes," and fix the date of the tender of the release as the 3d of December, 1894. Defendant excepted. The jury found all the issues in favor of the plaintiff, fixing the date of the tender of said release as the 3d of December, 1894.

The court thereupon rendered judgment in favor of the plaintiff, and the defendant excepted and appealed.

*Messrs. M. V. Lanier, R. O. Burton, W. A. Guthrie* and *Edwards & Royster*, for appellant.
*Messrs. Shepherd, Manning & Foushee* and *J. Crawford Biggs*, for appellee.

CLARK, J.: When this case was here before (116 N. C., 339) the Court set aside the non-suit taken below and held that the plaintiff could maintain an action as the case was then presented. The Court did so upon the ground that, there being apparently a valid liability of $40,000 against the town of Oxford, the compromise thereof for the sum of $20,000 was not necessarily void, and that the court

below erred in non-suiting the plaintiff. The case had been tried upon the view that the charter of the town of Oxford authorized the election under which the $40,000 indebtedness was contracted. The judge below held that this was not so, and hence that the compromise was not binding. This Court sustained the view taken below, that the town charter did not authorize the contraction of the indebtedness, but held that, on its face, the act chartering the railroad (Acts 1891, Ch. 315, Sec. 10,) authorized the election. The question as to the efficacy of that act had not been questioned below, as the plaintiff had rested its claim upon the authority of the town charter to sustain the election.

The questions decided before need not be called in controversy. We must take it that our former opinion settles that the town had authority to compromise a valid liability for a smaller sum, and that the Act of 1891, Ch. 315, *on its face*, authorized the election. When the second trial was had below the point was taken for the first time, that, conceding, as this Court had held, that the Act of 1891, Ch. 315, by its terms authorized the election, that act was invalid because not passed as required for all acts empowering counties, cities and towns to issue bonds. The Constitution, Art. II., Sec. 14. This section of the Constitution is imperative and not recommendatory, and must be observed; otherwise this wise and necessary precaution inserted in the organic law would be converted into a nullity by judicial construction. It was intended as a safeguard, and has been held mandatory in all other courts in which that question has been presented, as will be seen below. This point was not raised below in the former trial, nor in this Court, as the plaintiff was then relying upon the charter of the town, which we held invalid for that purpose. On this second trial, when the plaintiff

BANK *v.* COMMISSIONERS.

offered for the first time the Act of 1891, Ch. 315, as authority to show a valid election authorizing the indebtedness of $40,000 as a basis to authorize the compromise, (for, except as a compromise, the judgment would be void on its face, being *ultra vires*,) the defendant contended that the Act of 1891, Ch. 315, while valid as a railroad charter, was unconstitutional and void so far as authorizing the creation of an indebtedness by the town, because not enacted in the manner required by the Constitution, Art. II., Sec.14. The Journals were put in evidence and showed affirmatively that the act was not read three several days in each House, and that the ayes and noes were not entered on the readings in the House, as required by the Constitution for acts authorizing the creation of public indebtedness. The point, therefore, thus arises for the first time in this case, and was not presented and could not be presented in the former appeal for the reasons above given. The point is one of transcending importance, and is simply whether the people, in their organic law, can safeguard the tax-payers against the creation of State, county and town indebtedness by formalities not required for ordinary legislation, and must the courts and the Legislature respect those provisions? This safeguard is Section 14 of Article II. of the Constitution. It provides : " No law shall be passed to raise money on the credit of the State, or to pledge the faith of the State, directly or indirectly, for the payment of any debt, or to impose any tax upon the people of the State, or to allow the counties, cities or towns to do so, unless the bill for the purpose shall have been read three several times in each House of the General Assembly and passed three several readings, which readings shall have been on three different days and agreed to by each House respectively, and *unless the yeas and nays, on the second and third reading of the bill,*

*shall have been entered on the Journal.*" The Journals offered in evidence showed affirmatively that " the yeas and nays on the second and third reading of the bill " were not " entered on the Journal." And the Constitution, the supreme law, says that, unless so entered, no law authorizing State, counties, cities or towns to pledge the faith of the State or to impose any tax upon the people, &c., shall be valid.

This case has no analogy to *Carr v. Coke,* 116 N. C., 223. That merely holds that when an act is certified to by the Speakers as having been ratified, it is conclusive of the fact that it was read three several times in each House and ratified. Const., Art. II., Sec. 23. And so it is here ; the certificate of the Speakers is conclusive that this act passed three several readings in each House and was ratified. The certificate goes no further. It does not certify that this act was read three several days in each House and that the yeas and nays were entered on the Journals. The Journals were in evidence and showed affirmatively the contrary. The people had the power to protect themselves by requiring in the organic law something further, as to acts authorizing the creation of bonded indebtedness by the State and its counties, cities and towns, than the fact certified to by the Speakers of three readings in each House, and ratification. This organic provision plainly requires, for the validity of this class of legislation, *in addition* to the certificates of the Speakers, which is sufficient for ordinary legislation, the entry of the yeas and nays on the Journals on the second and third reading in each House. It is provided that such laws are " no laws, " i. e., *are void unless* the bill for the purpose shall have been read three several times in each House of the General Assembly and passed three several readings, which readings shall have been on three different days, and

agreed to by each House respectively, *and unless the yeas and nays on the second and third reading of the bill shall have been entered on the Journal.* This is a clear declaration of the nullity of such legislation unless this is done, and every holder of a State or municipal bond is conclusively fixed with notice of this requirement as an essential to the validity of his bond. If he buys without ascertaining that constitutional authority to issue the bond has thus been given, he has only himself to blame. 1 Dill. Mun. Corp., 545, and cases cited. It is certainly in the power of the sovereign people in framing their Constitution to require as a prerequisite for the validity of this class of legislation these precautions and the additional evidence in the Journals that they have been complied with, over and above the mere certificate of the Speakers which is sufficient for other legislation. That the organic law does require the additional forms and the added evidence of the Journals is plain beyond power of controversy. Accordingly, the law is well settled by nearly one hundred adjudicated cases in the courts of last resort in 30 states, and also by the Supreme Court of the United States, that where a State Constitution prescribes such formalities in the enactment of laws as require a record of the yeas and nays on the legislative Journals, these Journals are conclusive as against not only a printed statute published by authority of law, but also against a duly enrolled act.

The following is a list of the authorities, in number 93, sustaining this view either directly or by very close analogy. It is believed that no Federal or State authority can be found in conflict with them. Decisions can be found, as for instance *Carr* v. *Coke, supra,* to the effect that where the Constitution contains no provision requiring entries on the Journal of particular matters, such, for

example, as calls of the yeas and nays on a measure in question, the enrolled act cannot in such case be impeached by the Journals    That, however, is a very different proposition from the one involved here, and the distinction is adverted to in *Field* v. *Clark*, 143 U. S., on p. 671.   The authorities are as follows:

*Alabama*—48 Ala., 115 ; 54 Id., 599 ; 58 Id., 546 ; 60 Id., 361 ; 77 Id., 597 ; 82 Id., 562.

*Arkansas*—19 Ark., 250 ; 27 Id., 366 ; 32 Id., 496 ; 33 Id., 17 ; 40 Id., 200 ; 51 Id., 559.

*California*—8 Sawyer, 238 ; 54 Cal., 111 ; 69 Id., 479.

*Colorado*—5 Col., 525 ; 11 Id., 489 ; 20 Id., 279.

*Florida*—31 Fla., 291

*Georgia*—23 Ga., 566.

*Illinois*—14 Ill., 297 ; 17 Id., 151 ; 25 Id., 181 ; 35 Id., 121 ; 38 Id., 174 ; 43 Id., 77 ; 62 Id., 253 ; 68 Id., 160 ; 120 Id., 322.

*Indiana*—7 Ind., 683 ; 11 Id., 43.

*Iowa*—60 Iowa, 543.

*Kansas*—15 Kans., 194 ; 17 Id., 62 ; 26 Id., 724.

*Kentucky*—93 Ky., 537.

*Louisiana*—44 La., Ann., 223.

*Maryland*—41 Md., 446 ; 42 Id., 203.

*Michigan*—2 Gibbs, 287 ; 1 Doug., 351 ; 2 Mich., 191 ; 13 Id., 481 ; 22 Id., 104 ; 55 Id., 94 ; 59 Id., 610 ; 64 Id., 385 ; 72 Id., 446 ; 79 Id., 59 ; 80 Id., 593 ; 97 Id., 589.

*Minnesota*—2 Minn., 330 ; 24 Id., 78 ; 38 Id., 143 ; 45 Id., 451.

*Missouri*—4 Mo., 303 ; 71 Id., 266.

*Nebraska*—4 Neb., 503 ; 18 Id., 236 ; 20 Id., 96.

*Nevada*—19 Nev., 391.

*New Hampshire*—35 N. H., 579 ; 52 Id., 622.

*New York*—8 N. Y., 317 ; 42 Id., 379 ; 54 Id., 276 ; 130 Id., 88 ; 2 Hill, 31 ; 4 Hill, 384 ; 1 Denio, 9 ; 2 Denio, 97 ; 23 Wend., 134.

*Ohio*—20 Ohio St., 1.

*Oregon*—21 Ore., 566.

*Pennsylvania*—26 Pa. St., 446.

*South Carolina*—12 S. C., 300 ; 13 Id., 46.

*Tennessee*—6 Lea, 549 ; 86 Tenn., 732 ; 87 Id., 163 ; 91 Id., 596.

*Texas*—81 Tex., 230 ; 22 Tex. Ap., 396.

*Virginia*—79 Va., 269.

*West Virginia*—5 W. Va., 85.

*Wisconsin*—45 Wis., 543 ; 64 Id., 323 ; 80 Id., 407.

*Wyoming*—1 Wy., 85 ; Id., 96.

*United States*—6 Wall., 499 ; 94 U. S., 260 ; 105 Id., 667.

Of these cases, especially pertinent are 94 U. S., 260 ; 105 Id., 267 ; 42 N. Y., 379 ; 45 La., Ann., 223 ; 71 Mo., 266, and 22 Texas App., 396.

To same purport are Black's Constitutional Law, Secs. 31, 102 ; Cooley Constitutional Lim. (6th Ed.), 156, 163, 168 ; Smith Const. Lim., 833 ; Story Const., 590 ; Sedgwick Stat., 539, 551 ; Cush. Leg. Assemb., Sec. 2211 ; 1 Whart., 3 Ed., 260 ; 1 Greenleaf Ev., 491.

Constitutional requirements as to the style of acts or the manner of their passage are mandatory not directory. *State* v. *Patterson*, 98 N. C., 660, 663, 665. The 30 days' notice required before the passage of a private act is not required by the Constitution to be entered on the Journals, as is required as to the readings on several days, and the ayes and noes on each reading, with bills authorizing the contraction of public indebtedness, and hence it may be that the giving of such 30 days' notice is conclusively pre-

sumed as to such private acts (*Harrison* v. *Gordy*, 57 Ala., 49 ; *Walker* v. *Griffith*, 60 Ala., 361) though the contrary was intimated in *Gatlin* v. *Tarboro*, 78 N. C., 119.

The history of the country at large, and of this State as well, has shown the necessity of this safeguard as to acts authorizing the creation of public indebtedness, which has been incorporated also into several other State Constitutions. We have no power nor wish to nullify so plain and mandatory a provision, so carefully and explicitly worded, and which has been held binding by all other courts wherever the question has been presented.

The judgment on its face is by consent and for a railroad subscription. It is therefore on its face to be treated as void, being *ultra vires*, unless a special authority is shown authorizing the indebtedness for which it was a compromise (*Kelly* v. *Milan*, 127 U. S., 150); for, *ex virtute officii*, town commissioners have no authority whatever to bind the town by submitting to a consent judgment for $20,000 for a matter appearing on the face of the judgment to be not for town purposes. If the Commissioners of the town were vested with no authority to create the debt, they certainly could not acquire such power by entering into a consent judgment.

The consent judgment entered into by the town authorities could not bind the town to a subscription to a railroad unless the power to subscribe or donate had been legally granted by the Legislature.

Consent judgments are in effect merely contracts of parties, acknowledged in open court and ordered to be recorded. As such they bind the parties themselves thereto as fully as other judgments, but when parties act in a representative capacity such judgments do not bind the *cestuis que trustent* unless the trustees had authority to act, and when (as in the present case) the parties to the action,

the town authorities, had, as appears above, no authority to issue the bonds, their honest belief, however great, that they had such power would not authorize them to acquire such power and bind the town by consenting to a judgment. It is not a question of a fraudulent judgment but a void judgment from want of authority to consent to a decree to bind principals—the tax payers—for whom they had no authority to create an indebtedness by consenting to a judgment, any more than they would have had by issuing bonds. If authorized to create the indebtedness, either the bonds or the consent judgment would be equally an estoppel, but as they had no such authority neither bonds nor judgment is binding on the tax-payers. It is not their bond nor judgment. In *Kelly* v. *Milan. supra,* BLATCHFORD, J., says:, "The declaration of the validity of the bonds contained in the decree was made solely in pursuance of the consent to that effect contained in the agreement signed by the mayor and the officers of the railroad company. The act of the mayor in signing that agreement could give no validity to the bonds, if they had none at the time the agreement was made.........The adjudication in the decree, under the circumstances, cannot be set up as a judicial determination of the validity of the bonds. This was not the case of a submission to the court of a question for its decision on the merits, but was a consent in advance to a particular decision by a person who had no right to bind the town by such consent, because it gave life to invalid bonds, and the authorities of the town had no more power to do so than they had to issue the bonds originally."

In *Tex. & Pac. R. R.* v. *So. Pacific Co.,* 137 U. S., 48, 56, FULLER, C. J., says : " The decrees were entered by consent and in accordance with the agreement, the courts merely exercising an administrative function in recording what had been agreed to between the parties," and

hence holds that the Federal Courts in disregarding such decrees were not violating the rule that due effect must be given to the determination of the matter by a State court having jurisdiction.

In *Lawrence Mfg. Co.* v. *Janesville*, 138 U. S., 552, FULLER, C. J., again says : " The prior decree was the consequence of the consent (of parties) and not the judgment of the court ; and, this being so, the court had the right to decline to treat it as *res judicata*," citing many cases, among them our own case of *Lamb* v. *Gatlin*, 22 N. C., 37, *infra*, and refused to execute a former decree, saying : " As, therefore, if the old company had defended the suit against it, it would have prevailed, the decree of the circuit court being correct upon the merits, it is also correct in that the court refused to be constrained by the previous erroneous *consent decree* to decree contrary to the right of the cause." In *Gay* v. *Paspart*, 106 U. S., 679, MILLER, J., says (p. 698) : "Such decree as was had, being dependent upon consent, did not operate as a judicial decision by the court." This treatment of consent decrees prevails thus in law as well as equity, *Kelly* v. *Milan, supra*, being an action at law to recover judgment on bonds issued in aid of a railroad, and the other cases above cited being in equity. In *Brownsville Taxing District* v. *Loge*, 129 U. S., 493, 505, which is substantially like the present, being an application for a *mandamus* to compel the levying of a tax to pay a judgment rendered on interest coupons of bonds, FULLER, C. J., says : " The Court cannot decline to take cognizance of the fact that the bonds are utterly void, and no such remedy exists. *Res judicata* may render straight that which is crooked, and black that which is white—*facit ex curvo rectum, ex albo nigrum*—but where application is made to collect judgments by process not contained in themselves and requiring to be sustained,

reference to the alleged cause of action upon which they are founded, the aid of the court should not be granted when upon the face of the record it appears, not that mere error supervened in the rendition of such judgment, but that they rest upon no cause of action whatever." So, in the present case, even if the former judgment had not been by consent, it appears that there was no authority to issue the bonds, and the courts will not issue *mandamus* to levy a tax to pay such judgment.

In *Lamb* v. *Gatlin*, 22 N. C., 37, (cited and approved by the Supreme Court of the United States *ut supra*,) GASTON, J., says, as to the effect of a consent judgment by an executor, that it did not bind the beneficiaries of the estate, as here the tax-payers are not bound by the consent judgment entered into by the town authorities, because " it is not in truth a decree *in invitum*, and by a judgment of the court to which the defendant was compelled to submit, and which, therefore, would not only bind him, but those also for whose benefit he held the estate, unless it can be impeached for fraud ; but it is a voluntary settlement between the defendant and the persons then claiming, which the parties to that settlement have chosen to invest with the forms of a judicial determination. The decree _____ was avowedly adopted because *it was made by the parties.* A decree thus rendered as against the present plaintiffs (who were the principals whom the defendant in the consent judgment represented) has no force except so far as it is seen to be just." There are other authorities to the like effect and purport, but the above will suffice. A recital of facts which the corporate officers had no authority to determine, or a recital of matters of law, do not estop the corporation. *Dixon Co.* v. *Field,* 111 U. S., 83 ; *Bank* v. *Porter Township,* 110 U. S., 608.

The certificate of the Speakers is not good for more than it

certified, i. e. that the bill has been read three times in each House and ratified. And ordinarily that makes the bill a law. But for this class of legislation the Constitution provides that the facts thus certified by the Speakers will make no law unless it further appears that the yeas and nays have been recorded on the Journals on the second and third reading in each House. The Constitution makes the entry on the Journals essential to the validity of the act. If it be conceded that presumption of regularity arises from the publication of the act in this case, it was rebutted, for the Journals were offered by the defendant, and showed that no constitutional authority had been conferred to issue the bonds or contract the indebtedness. It is incumbent upon the purchaser of municipal bonds to examine whether the power to issue has been duly granted. *Lake* v. *Graham,* 130 U. S., 674 ; *East Oakland* v. *Skinner,* 94 U. S., 255 ; 1 Dillon Mun. Corp., 245. The bonds, having been issued without authority, were absolutely void. *Marsh* v. *Fulton Co.,* 10 Wall., 676 ; *Clarke* v. *Hancock Co.,* 27 Ill., 305. The payment of interest is no ratification, for there can be no ratification when there is want of power. *Doon* v. *Cummins,* 142 U. S., 376 ; *Daviess Co.* v. *Dickinson,* 117 U. S., 657, 665 ; *Norton* v. *Shelby Co.,* 118 U. S., 425, 451 ; *Lewis* v. *Shreveport,* 108 U. S., 282, 287.

In instructing the jury upon the evidence to find the issues in favor of the plaintiff there was error.

Error.

FAIRCLOTH, C. J., dissents.