BOARD OF COM'RS OF OXFORD, N. C., et al. v. UNION BANK OF RICH-
MOND, VA.

(Circuit Court of Appeals, Fourth Circuit.    August 11, 1899.)

No. 297.

1. FEDERAL COURTS—FOLLOWING STATE DECISIONS.
    The fact that the supreme court of a state on one appeal sustained the
    validity of a statute does not affect its right to declare the statute void on
    a subsequent appeal in the same suit, on a ground not presented by the rec-
    ord or considered on the first appeal, nor the weight to be given to such
    decision by a federal court.

2. SAME—CONSTRUCTION OF STATE STATUTES.
    A decision of the supreme court of a state holding municipal bonds void
    for want of power in the municipality to issue them, the question being one
    depending on the construction of the state constitution and the validity of
    state statutes, will be followed by a federal court in an action between
    the same parties on the same bonds, though by reason of a nonsuit taken
    by plaintiff the decision of the state court did not pass into a final judg-
    ment so as to render the question res judicata.[1]

3. MUNICIPAL BONDS—POWER TO ISSUE—CONSENT JUDGMENT.
    Where a town had no power, under the constitution and statutes of the
    state, to issue bonds to a railroad company, the defect cannot be cured
    nor such bonds rendered valid by the consent of its officers to a compromise
    judgment by which it issued a smaller amount than that voted, the question
    of the town's power not being involved or determined by the judgment.

4. SAME—ESTOPPEL TO CONTEST VALIDITY—ACTION OF OFFICERS.
    The officers of a town cannot by any agreement, or by the payment of
    interest on bonds, estop the town from raising the question of the legal
    existence or constitutionality of the statute under which such bonds were
    issued.

In Error to the Circuit Court of the United States for the Eastern
District of North Carolina.

R. O. Burton, for plaintiffs in error.

C. M. Busbee and J. S. Manning (John W. Hinsdale, on the brief),
for defendant in error.

Before GOFF, Circuit Judge, and MORRIS and WADDILL, Dis-
trict Judges.

GOFF, Circuit Judge.    This action at law was brought in the
circuit court of the United States for the Eastern district of North
Carolina by the Union Bank of Richmond, Va., a corporation organ-
ized under the laws of the state of Virginia, against the board of
commissioners of Oxford, a municipal corporation existing under the
laws of the state of North Carolina.    The object of the suit was to
recover the amount claimed by the plaintiff to be due from the defend-
ant for interest on certain bonds, as shown by coupons then in the
possession of the plaintiff, and also to compel the defendant, by man-
damus, to levy taxes and pay the plaintiff the sum due it.

The general assembly of the state of North Carolina, at its session
held in the year 1891, passed an act to incorporate the Oxford &
Coast Line Railroad Company.    Laws 1891, c. 315.    Under the pro-

[1] As to conclusiveness of judgment between state and federal courts, see
note to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478.

visions of this act certain counties, cities, towns, and townships were authorized to issue bonds to aid in the construction of said railroad. On March 9, 1891, certain of the citizens and taxpayers of the town of Oxford petitioned the mayor and board of commissioners of that town to provide for an election, under the provisions of the then existing laws, on the proposition to subscribe the sum of $40,000 to aid in the building of the Oxford & Coast Line Railroad, and to issue the bonds of said town to that amount for such purpose. Such election was ordered and duly held, with the result that the bonds were authorized to be issued. On the 4th of August, 1891, at a meeting of the board of commissioners of Oxford, the following order was passed and entered of record:

"Resolved, that the bonds of the town of Oxford, to the amount of forty thousand dollars, of the denomination of one thousand dollars each, payable on the 1st day of December, 1921, with interest not exceeding six per cent. per annum, payable on the first days of June and December every year until maturity, with the right to the town, after ten years, upon three months' notice in some newspaper published in the town of Oxford and the cities of Baltimore and New York, to redeem said bonds, upon paying the sum of $1,050, and the accrued interest on each bond, and upon the completion of a contract by the authorities of the Oxford & Coast Line Railroad for the construction of the same, be delivered to the president of said railroad company to aid or assist in building said railroad, and that whatever proportion of said $40,000 is used in building and equipping said road shall be considered a subscription to the capital stock of said railroad, and a certificate shall be issued to the town of Oxford for stock to said amount."

On the 14th day of July, 1892, the Oxford & Coast Line Railroad Company, together with one James T. Pruden, instituted a proceeding for a mandamus in the superior court of Granville county, N. C., against the board of commissioners of Oxford, returnable to July term, 1892. In the complaint then filed the facts hereinbefore stated were referred to, and, in addition, it was set forth that on the 26th of February, 1892, a contract was duly entered into by and between said railroad company and James T. Pruden for the construction and operation of the road from Dickerson's Station, on the Durham & Northern Railroad, to the town of Oxford; and that on the 3d day of March, 1892, said Pruden began the actual construction of said line of road, and had been, and then was, engaged in grading and preparing the roadbed, and would soon be ready to lay the track and complete the road for the transportation of freight and passengers; that on May 2, 1892, the said board of commissioners adopted a resolution concerning said bonds, which attempted to nullify the action of said board taken when the result of the election was declared, and that the mayor of the town of Oxford had refused to sign the ordinance directing said subscription, and that said board of commissioners have resolved to and do uphold him in such refusal, contrary to the plighted faith of said town as expressed at said election, and as declared by the resolution of the commissioners themselves; also that the railroad company was desirous of performing its contract with said Pruden, and was unable to do so because of the refusal of said commissioners to issue and deliver the bonds. Therefore the plaintiff in such petition prayed that the defendants be required to perform their said contract, and that a writ of mandamus issue com-

manding said board to issue the $40,000 of bonds so subscribed by said town, and for other and proper relief. The defendants duly answered the petition, and, pending the controversy, an agreement of compromise was entered into between the railroad company, its contractor, Pruden, and the board of commissioners of Oxford, by which it was provided that, in the adjustment of the existing differences, the town should issue its bonds for $20,000 (in the sum of $1,000 each, payable August 1, 1922, with interest, as shown by coupons attached), which should purport on their face to be issued under and in pursuance of said chapter 315, Laws 1891, and chapter 21 of the Private Laws of 1885, and the election held April 27, 1891, as also under the said agreement of compromise, which was to be entered in said suit as the judgment of the superior court of Granville county, with the assent of all the parties thereto. The compromise agreement was dated July 25, 1892, and the judgment of the court, in substance the same as the agreement, was entered during its July term, 1892. On August 1, 1892, the board of commissioners of Oxford issued 20 bonds of the denomination of $1,000 each, which were delivered to the president and treasurer of the Oxford & Coast Line Railroad Company. It is recited on the face of each of said bonds, as follows:

"This bond is issued in pursuance of the powers and the authority granted by the state of North Carolina, as provided in chapter 49 of the Code of North Carolina, and in pursuance of the authority granted by section 30 of the charter of said town of Oxford, which is embraced in chapter 21 of the Private Laws of 1885, as passed by the general assembly of said state, and in pursuance of the authority granted by chapter 315 of the Laws of 1891, passed by the general assembly of North Carolina, ratified the 5th day of March, 1891, entitled 'An act to incorporate the Oxford & Coast Line Railroad Company,' and in pursuance of an election held in said town of Oxford on the 27th day of April, 1891, and of a settlement and adjustment of a controversy and litigation in which the Oxford & Coast Line Railroad Company et al. were plaintiffs and the board of commissioners of Oxford and the mayor of said town were defendants, adopted by the board of commissioners July 25, 1892, and the judgment and decree of his honor, H. G. Connor, judge presiding at the hearing of said action, at July term, 1892, of Granville superior court."

The plaintiff below, on the 12th day of September, 1892, purchased in good faith, in the usual course of business, 16 of said bonds, paying for each the sum of $975, the plaintiff having no other notice than such as the law implies and as is contained on their face concerning such bonds. The coupons maturing May 1, 1893, were paid by defendants below when the same were presented. The other coupons, showing the interest due on the bonds held by the plaintiff when this suit was instituted, amounting to $4,320, were duly presented at maturity for payment, and payment was refused. The Oxford & Coast Line Railroad has not, as yet, been completed.

The plaintiff below, before it instituted this suit, had sued the defendants below in the superior court of Granville county, N. C., and that case was twice before the supreme court of that state, being reported as Union Bank of Richmond v. Board of Com'rs of Town of Oxford, 116 N. C. 339, 21 S. E. 410, and 119 N. C. 214, 25 S. E. 966. Such suit was a petition for a mandamus to compel the commissioners of the town of Oxford to levy taxes to pay the interest due on said bonds. The superior court of Granville county, at the close of the

evidence when the case was first tried, intimated an opinion that the bonds were issued without authority of law, and thereupon the plaintiff submitted to a nonsuit and appealed. The supreme court then held that Acts 1891, c. 315, § 10, relating to these bonds, and providing for the mode of payment thereof, was not void under article 7, § 7, of the constitution of North Carolina, because it did not provide for a special election to authorize the issuance of the bonds, as the general laws relating to such elections were applicable. Consequently the nonsuit was set aside, and a new trial granted. When the second trial was held in the superior court of Granville county the point was made, for the first time, that, conceding that Acts 1891, c. 315, by its terms authorized the election, still that act was invalid because it had not been passed in compliance with the requirements of the constitution of North Carolina concerning acts granting the power to counties, cities, and towns to issue bonds. Such provision is article 2, § 14, and is as follows:

"No law shall be passed to raise money on the credit of the state, or to pledge the faith of the state, directly or indirectly, for the payment of any debt, or to impose any tax upon the people of the state, or to allow the counties, cities or towns to do so, unless the bill for the purpose shall have been read three several times in each house of the general assembly, and passed three several readings, which readings shall have been on three different days, and agreed to by each house respectively, and unless the yeas and nays on the second and third reading of the bill shall have been entered on the 'journal.'"

During the second trial in the superior court it was shown that, on the passage of said act in the house of representatives, it passed its second and third readings on the same day, and that the yeas and nays were not entered on the journal on either of said readings. The superior court held that, nevertheless, the bonds were valid, and a verdict was directed for the plaintiff, on which a judgment for the amount claimed was rendered. The defendants appealed, and the supreme court reversed said judgment, holding that the bonds were absolutely void, and incapable of ratification. When the certificate and opinion of the supreme court reached the court below, the plaintiff voluntarily submitted to a nonsuit, and then instituted the suit we now consider, declaring on the same coupons sued on in the state court, and also on others that had become due after the beginning of said first suit. The case was regularly brought on for a hearing, when the court below entered a judgment in favor of the plaintiff for $4,320, the full amount due on the interest coupons that had matured when this action was instituted, and also directed that a writ of mandamus issue to the defendants, commanding them to levy sufficient taxes to pay said judgment and the cost of this litigation. 90 Fed. 7. Thereupon the said defendants applied for and were awarded the writ of error we are now disposing of.

The court below appears to have reached the conclusion it did because of the belief entertained by it that, previous to the time of the issuing of the bonds in controversy, the courts of the state of North Carolina had held that the laws under which they were issued were valid and constitutional, and that their invalidity is now claimed only because of the decisions of said courts, subsequently rendered, which overrule such former judgments, and which, in their force and

effect, impair the obligations of contracts, the impairment of which is prohibited by the constitution of the United States. In the opinion of this court, announced during the present term, in the case of Board of Com'rs of Stanly Co. v. Coler, 96 Fed. 284, we have fully considered and disposed of the questions relating to the validity of legislation of the character of that under which the bonds now in controversy were issued. This case, so far as it relates to the questions growing out of the provisions of section 14, art. 2, of the constitution of North Carolina, is governed by the decision we announced in that case, and to it and the authorities there cited we now refer in disposing of the like questions herein involved. A further consideration of the points there discussed will be unprofitable.

The contention that the supreme court of North Carolina, when this matter was before it, decided the essential matters involved in favor of the validity of the bonds in suit, is not in our judgment sustained by the opinion of that court. Union Bank of Richmond v. Board of Com'rs of Town of Oxford, 116 N. C. 339, 21 S. E. 410. That court decided the case as it was then made and submitted to it, and the record discloses the fact that the questions relating to section 14, art. 2, of the constitution were not raised or presented for consideration until during the second trial of the case. The matter of the efficacy of the act chartering the railroad was not presented by the record when the case first went to the supreme court, and as a matter of course was not passed upon. But the plaintiff below could not have been injured in the least, even if there had been a change of judicial construction when the opinion was announced as reported in 119 N. C. 222, 25 S. E. 966, for the reason that the plaintiff had been the owner of said bonds since the 12th day of September, 1892, and the decisions mentioned were not rendered until on the 26th of March, 1895, and the 17th of November, 1896, respectively. The supreme court of North Carolina has passed upon the identical questions and facts involved in this controversy. It has construed both the constitution of that state and the legislation of the same relating to the bonds in suit, and it has decreed the absolute want of authority in the board of commissioners of the town of Oxford to issue said bonds. Our views concur with the decision of that court in the particulars mentioned; but, independent of that, the construction by that court of the constitution and laws of that state would, under the circumstances of this case, be followed by us.

The defendant in error insists that the judgment by consent entered in the suit instituted by the railroad company in the superior court of Granville county against the plaintiffs in error binds the latter to a compliance with the terms thereof, and renders valid the bonds issued thereunder. This claim is without merit, and is, we think, the result of a misconception of the effect of the compromise that was effectuated by the judgment referred to. The town had no legal right to donate the bonds to the railroad company, nor had it the power to issue them, in order to secure the compromise, unless such power was expressly granted by legislative enactment; and that such was the understanding at the time between the parties to the controversy is shown by the reference, both in the judgment and on

the face of the bonds, to the act of the assembly under which the authority to issue them was claimed. The railroad company insisted that the town should issue to it bonds to the amount of $40,000, by virtue of the action taken under the legislation referred to, and the town, while not admitting its liability to that amount, offered to adjust the controversy by issuing, under said enactment, bonds of the character therein described to the amount of $20,000. That offer was accepted by the railroad company, and the compromise agreement was signed, the consent judgment entered, and the bonds issued. The validity of the legislation involved was not in issue, and if that legislation was invalid when the compromise was entered into the rendition of the judgment based thereon did not make it valid. If the town had not the power to issue the bonds, the consent of its board of commissioners to the compromise agreement would not cure that defect. Kelley v. Milan, 127 U. S. 139, 8 Sup. Ct. 1101; Doon Tp. v. Cummins, 142 U. S. 366, 376, 12 Sup. Ct. 220; Norton v. Shelby Co., 118 U. S. 425, 451, 452, 6 Sup. Ct. 1121. The board of commissioners of the town of Oxford cannot, by its action, by its agreement, or consent judgment, or the payment of interest on the bonds, estop that municipality from ascertaining the legal existence or constitutionality of an act of the general assembly of North Carolina under which it is claimed that its inhabitants are liable to taxation. Marsh v. Fulton Co., 10 Wall. 676; Town of South Ottawa v. Perkins, 94 U. S. 260; Doon Tp. v. Cummins, supra; Daviess Co. v. Dickinson, 117 U. S. 657, 665, 6 Sup. Ct. 897; Lewis v. City of Shreveport, 108 U. S. 282, 2 Sup. Ct. 634; East Oakland Tp. v. Skinner, 94 U. S. 255; Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654. The judgment of the court below will be reversed, and this cause will be remanded, with instructions to set aside the order awarding a writ of mandamus, and then dismiss the complainant's bill.