AVERY and CLARK, JJ., dissent, arguendo.
The plaintiff, as a citizen and taxpayer of the State, brings this action against the defendant as Secretary of State, who by virtue of his office is the custodian of all acts passed by the Legislature, or which purports to have been passed, whose duty it is to deliver certified copies of said acts to the Public Printer for publication.
The prayer is that the defendant show cause why a peremptory mandamus shall not issue to compel him to remove the act under consideration from his files, and why he should not be enjoined from delivering a certified copy of the same to the Public Printer. An act to regulate assignments and other conveyances of like nature in North Carolina, ratified 13 March, 1895, is the one under consideration.
The complaint alleges that the act was signed by the President of the Senate and the Speaker of the House of Representatives on the said 13 March in the presence of each House, and purports to have been ratified upon that day; that, upon information and belief the act did not become law according to the Constitution of the State. That the Journals of both houses show that it was not read three times in either; that it was never read in the Senate, and was tabled in the House on its second reading, and that by some unknown fraudulent means the bill was enrolled by some person, unknown to the plaintiff, and signed by the said President and Speaker by mistake.
The defendant answered denying the material allegations.
At the hearing the defendant moved to dismiss the action on (233) the ground that the court had no jurisdiction to grant the relief prayed for by the plaintiff. The motion was heard and his Honor dismissed the action for want of jurisdiction to grant the relief on the ground that the court cannot go behind the ratification of the act as the same appeared in the office of the Secretary of State. With the act before us, on its face regular and in due form, ratified by the genuine signatures of the President of the Senate and Speaker of the House, the question is presented, Can the court, as a coordinate branch of the government, look behind this record and investigate by inquiry and proof the manner in which this record was established by the legislative branch of the government, for any of the causes alleged in the complaint?
It may be stated in the outset that it is an important question and one that has not been heretofore presented directly to this Court.
The Court cannot be blind to the consequences that will flow from a decision either way. On the one hand, if we cannot look behind the record, then, paid and corrupt men, lobbyists and other interested ones *Page 136 
in and around the legislative halls, will feel more confident and safer in their disreputable work. On the other hand, if we can open the door and permit every act of the Legislature to be inquired into, behind the record, for any of the causes alleged in the complaint, then the State will be plagued with all the evils of a veritable Pandora's box. By an examination of the decisions of the courts of the different States, we find some diversity among the decisions and the opinions of eminent jurists. Those courts, holding the affirmative of the question, as a rule have done so by reason of some provision in their state constitutions (234) or some preexisting statutes. In one or more states the negative was held, and after a change in their constitutions the reverse was held by reason of some new clause in the organic law.
We find in no state constitution the exact wording as it is in ours. We are therefore left to reason with ourselves, and construe the true meaning of our organic law, aided by the best authorities at our command.
Let it now be understood that it is not a question of fraud or wrongdoing in the legislative halls, as alleged in the complaint, with which we are confronted, but simply a question of power. It cannot be said that this Court from it origin until now has ever failed to lay its hands upon fraud or any wrongdoing, whenever authorized by law and requested to do so. If crimes are perpetrated in legislation, the authors are liable and can be punished as other violators of the law, and possibly a reasonable and honest effort by the proper authorities would bring to light the authors of the wrong, if any has been done. There is now before the Court in this proceeding no one who is in the slightest degree alleged or supposed to be connected with wrongdoing in this matter. So, then, we are considering a question of power, and not of investigation behind the record of a coordinate branch of the State government.
Our Constitution, Art. II, sec. 16, declares that: "Each House shall keep a journal of its proceedings, which shall be printed and made public immediately after the adjournment of the General Assembly," and in section 23, "All bills and resolutions of a legislative nature shall be read three times in each House before they pass into laws, and shall be signed by the presiding officers of both Houses." What shall be the entries on the Journals is not indicated by the Constitution, except as above. It is the province and duty of the Court to construe and interpret legislative acts, and see if they disregard or violate any provision (235) of the Constitution, and if so found, to declare them invalid, and this is done upon the face of the act itself. Beyond this duty arises the question of power in the Court to look behind the legislative record and inquire into its proceedings for any cause set out in the complaint. Our decision upon this question is based upon the "reason of *Page 137 
the thing," upon public policy for the best interests of the State, and upon the decisions of other courts and our own, which commend themselves to our minds, some of which are now cited.
At common law the ratification and approval of an act of Parliament was conclusive and unimpeachable, etc. "An Act of Parliament, thus made, is the exercise of the highest authority that this Kingdom acknowledges upon earth." "And it cannot be altered, amended, dispensed with, suspended or repealed, but in the same forms and by the same authority of Parliament; for it is a maxim in law that it requires the same strength to dissolve, as to create an obligation." 1 Blackstone Com., 185-6. "The journal is of good use for the intercourses between the two Houses, and the like, but when the act is passed the Journal is expired. The Journals of Parliament are not records, and cannot weaken or control a statute, which is a record and to be tried only by itself." Rex v.Arundel, Hobart, 109-111, Trinity Term, 14 Jac. Broadnax v. Groom,64 N.C. 244, was a question upon a private act requiring 30 days notice of application, required by Article II, section 4 (now section 12) of the Constitution, and the motion was to prove that the notice had not been given. Pearson, C. J., said: "We are of opinion that the ratification certified by the Lieutenant Governor and the Speaker of the House of Representatives makes it a `matter of record,' which cannot be impeached before the courts in a collateral way. Lord Coke says, `A record until reversed importeth verity.' There can be no doubt that acts of the Legislature, like judgments of courts, are matters of record, and (236) the idea that the verity of the record can be averred against in a collateral proceeding is opposed to all of the authorities. The courts must act on the maxim, `Omnia presumuntur,' etc. Suppose an act of Congress is returned by the President with his objection, and the Vice-President and Speaker of the House certify that it is passed afterwards by the constitutional majority, is it open for the courts to go behind the record and hear proof to the contrary?"
In Scarborough v. Robinson, 81 N.C. 409, in which this question was not directly before the Court, Smith, C. J., in the discussion uses this language on page 426: "The Constitution declares that the legislative, executive and supreme judicial powers of the government ought to be forever separate and distinct from each other. Art. I, sec. 8. And if the nature and effect of an enrolled bill, duly certified and deposited in the proper office, be such as we have attributed to it, it unavoidably follows that the compulsory order demanded in the action would be an interference with the legitimate exercise of the law-making power and an obstruction to the harmonious working of the separate and distinct coordinate departments of the government, and must consequently be *Page 138 
denied." We quote this extract in order to show the trend of the judicial mind of the Court as then constituted. In Field v. Clark, 143 U.S. 649
(1891) the question was elaborately argued and considered in an able opinion. The allegation was that an important section in the bill as it passed was not in the enrolled bill authenticated by the signatures of the Speakers and deposited in the office of the Secretary of State. After full consideration of the numerous points argued, the Court held as follows: "The signing by the Speaker and by the President (237) of the Senate, in open session, of an enrolled bill is an official attestation by the two Houses of such bill as one that has passed Congress; and when the bill thus attested receives the approval of the President and is deposited in the Department of State according to law, its authentication as a bill that has passed Congress is complete and unimpeachable. It is not competent to show from the Journals of either House of Congress that an act so authenticated, approved and deposited, did not pass in the precise form in which it was signed by the presiding officers of the two Houses and approved by the President."
The argument was pressed that a bill signed by the Speakers and approved by the President and deposited with the Secretary, as an act, does not become a law if it had not in fact been passed by Congress. The Court said, in view of the express requirements of the Constitution, the correctness of this general principle cannot be doubted. "But," said the Court, "this concession of the general principle does not determine the precise question before the Court, for it remains to inquire as to the nature of the evidence upon which a court may act, when the issue is made as to whether a bill, asserted to have become a law, was or was not passed by Congress. This question is now presented for the first time in this Court."
"We cannot be unmindful of the consequences that must result if this Court should feel obliged to declare that an enrolled bill, on which depend public and private interests of vast magnitude, which has been duly authenticated by the presiding officers and deposited in the archives as an act of Congress was not in fact passed, and therefore did not become a law." Page 670. Although the Constitution does not require that Acts of Congress shall be authenticated by the Speakers' signatures, the Court said that "Usage, the orderly conduct of legislative proceedings, and the rules under which the two bodies have acted since (238) the organization of the government, require that mode of authentication," and when a bill is so authenticated "it carries on its face a solemn assurance by the legislative and executive departments that it was passed by Congress. The respect due to coequal and independent departments requires the judicial department to act on that assurance, leaving the courts to determine whether the act so authenticated *Page 139 
is in conformity with the Constitution." Page 372. "It is admitted that an enrolled act thus authenticated is sufficient evidence of itself, nothing to the contrary appearing upon its face, that it passed Congress." Page 672.
In Pangborn v. Young, 32 N.J. Law, 29, Beasley, C. J., delivered a strong opinion against the affirmative of the present question, and JudgeHarlan says: "The conclusion was that upon grounds of public policy as well as upon the ancient and well settled rules of law, a copy of a bill bearing the signatures of the presiding officers of the two Houses and in custody of the Secretary of State, was conclusive proof of the enactment and contents of a statute, and could not be contradicted by the legislative journals or in any other mode" (page 674, and other cases).
In ex parte Wren, 63 Miss. 512, is found a case much in point, in which Campbell, J., in an able and vigorous opinion, said that an enrolled act, such as we are considering, "is the sole exposition of its contents and the conclusive evidence of its existence according to its purport, and it is not allowable to look further to discover the history of the act or ascertain its provisions. Every other view subordinates the Legislature and disregards that coequal position in our system of the three departments of government." He then shows that, if such a rule should prevail, a justice of the peace and all other judicial officers would be compellable and would have the right to investigate the question whether any legislative act was passed according (239) to the requirements of the constitution and whether it was procured by mistake, fraud or otherwise, and upon the complaint of any resident taxpayer.
With these authorities we are content. There are numerous others, but it would be useless to pursue them. We are considering the main and important question which we understand the plaintiff intended to bring to the attention of the Court, without any remarks on the pleadings. It seems to be conceded that the main allegation cannot be established by the Journals as evidence, and that consequently it must be done by some other kind of proof. It is urged that fraud vitiates everything, but if we can go behind the record, would not mistake, bribery, etc., serve equally as well? It is also argued that the fraud alleged is admitted and is therefore to be taken as a fact for the purposes of this action. Admitted by whom? The respondent does not admit it in his answer. The motion was to dismiss for want of jurisdiction, and the court rendered its decision expressly on that ground. The defendant is a mere ministerial State officer who was not a member of the Legislature, and has no authority from it to plead or admit anything for it. Is he authorized by the Speakers of the two Houses to admit that they signed the bill by mistake? They have made no such admission so far *Page 140 
as this record discloses, and they have no opportunity to admit or deny anything. Is the defendant authorized to admit that by some unknown and fraudulent means the bill was enrolled? If so, who authorized him to admit it? The defendant might have ignored this proceeding entirely without the slightest dereliction of duty. Who then defends the Legislature or its Speakers when this grave question is under consideration? The Executive does not feel it his duty to defend in the matter, (240) presumably because he is not authorized by any one to do so. Then, is there such admission of fraud or any other wrong as to enable the Court to treat the allegations of the complaint as facts? But, however these matters are, we have seen that we have no power to make the order asked for by the plaintiff, and that the remedy, if any is needed, is with the legislative branch of the State government.
We are of opinion that his Honor committed no error, and his judgment is
Affirmed.