BOARD OF COM'RS OF STANLY COUNTY, N. C., et al. v. COLER et al.

(Circuit Court of Appeals, Fourth Circuit. August 11, 1899.)

No. 290.

1. STATUTE—VALIDITY OF ENACTMENT—CONSTITUTIONAL REQUIREMENTS.

Under the requirement of Const. N. C. art. 2, § 14, that no law shall be passed authorizing the imposition by the state or a municipality of any tax upon the people unless the bill for that purpose is read the second and third times on different days, and the yeas and nays on its passage are called and recorded on the journal of each house, to sustain the power of a county to issue bonds and levy a tax for their payment it must be shown that the legislative journals contain the record of the yeas and nays on the passage of the act under which such power is claimed, and the journals are, by virtue of the constitutional provision itself, the evidence of such fact.

2. RAILROADS—POWER OF COUNTY TO SUBSCRIBE TO STOCK—STATUTE OF NORTH CAROLINA.

Code N. C. § 1996, providing that "the boards of commissioners of the several counties shall have power to subscribe stock to any railroad company or companies when necessary to aid in the completion of any railroad in which the citizens of the county may have an interest," applies only to railroads which had been commenced prior to the adoption of the constitution of 1868, in which a county has a pecuniary interest, and which have not been "completed."

3. FEDERAL COURTS — FOLLOWING STATE DECISIONS — VALIDITY OF STATE STATUTE.

Where the highest court of a state has directly determined that a state statute authorizing counties to issue bonds was not passed in conformity to the requirements of the constitution, and is therefore not a law of the state, such decision is binding on a federal court in a subsequent action brought therein to enforce bonds purporting to have been issued under

such statute, though the parties to such suit were not parties to the state decision.[1]

4. SAME—CONSTRUCTION OF STATE STATUTES.

The decision of the supreme court of a state that certain bonds issued by a county were void for want of power in the county, under the state constitution and statutes, to issue them, is binding on a federal court in a suit upon the same bonds, although the plaintiff was not a party to the state decision, unless at the time the bonds were issued and sold the constitution or statutes had been given a different construction.

Appeal from the Circuit Court of the United States for the Western District of North Carolina.

A. C. Avery and David Schenck, Jr. (James E. Shepherd, on the brief), for appellants.

Charles Price, for appellees.

Before GOFF, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

GOFF, Circuit Judge.    In 1870 the Yadkin Railroad Company was organized under the laws of the state of North Carolina.    The corporation was created by an act of the assembly of that state passed in the year 1871, and the charter was amended by an additional act passed in 1887.    By virtue of the provisions of the amended act, Stanly, a county of North Carolina, was authorized to subscribe to the capital stock of said railroad.    As provided by the legislation mentioned, the question was submitted to a vote of the people of that county, and a subscription of $100,000 was ordered to said stock. The commissioners of the county, as authorized by such vote, prepared and issued bonds to the amount of $100,000, face value, and delivered them to the railroad company.    These bonds, it is alleged in the bill, were placed on the market, and sold to bona fide purchasers for value.    Each of the bonds on its face recites that it is one of a series issued by authority of an act of the assembly of North Carolina ratified March 3, 1887, and of sections 1996–1999 of the Code of North Carolina, and authorized by a majority vote of the qualified voters of Stanly county at an election regularly held for that purpose August 15, 1889, and issued to pay the subscription made by that county to the capital stock of the Yadkin Railroad Company.    For four successive years after these bonds were issued a tax was regularly levied and collected for the purpose of paying the interest due on them, and the coupons representing the same were duly paid.    The tax for the fifth year was also levied and collected.    Then the commissioners of said county (certain taxpayers joining with them) instituted proceedings in the superior court of that county against the treasurer of the same, the object of which was to prevent the application of the money in the hands of that official, collected for the purpose of paying the interest on said bonds, from being so applied, and also to have said bonds decreed invalid.    The contention of the plaintiffs in that suit was that all of said bonds and coupons were void,

---

[1] As to the construction of state statutes generally, see note to Wilson v. Perrin, 11 C. C. A. 76.

and in support of such claim they alleged that neither of the acts of the assembly referred to—the act of 1871, under which the railroad company was organized, and the amendment thereof in 1887, under which the subscription was alleged to have been made—was passed in accordance with the requirements of section 14, art. 2, of the constitution of North Carolina, in that neither of said acts, in fact, passed three separate readings in the house of representatives of said state on three different days, and also because the yeas and nays were not taken in said house upon any reading of either of the acts, and for the reason that the yeas and nays, if taken at all, were not entered upon the journal of the house upon any of the readings of said bills. The superior court of Stanly county, on the final hearing of such suit, decreed that the bonds were invalid, and made permanent an injunction by which said treasurer was inhibited from paying the interest then due on them. Subsequently, on appeal, the supreme court of North Carolina affirmed this ruling. Board v. Snuggs, 121 N. C. 394, 28 S. E. 539. The complainants below, appellees here, citizens and residents of the state of New York, and the owners and holders of a large number of such bonds, amounting to over $60,000, face value, which they had purchased in open market for value before maturity, being unable to collect the interest then due on the same, although a tax had been levied and collected for that purpose, instituted this suit in the circuit court of the United States for the Western district of North Carolina against the board of commissioners of said county and such treasurer, for the purpose of securing such payment, and to prevent such treasurer from using the tax so in his hands for any other purpose than that for which it was collected. Complainants below alleged that they so purchased the bonds in good faith, and without any notice, expressed or implied, that they were otherwise than legal and valid; that the interest then due them and unpaid amounted to $3,870; that although the said commissioners had made such levy, and the same had been collected and was then in the hands of their treasurer, he refused to pay such interest; that, as said tax had been collected for the sole purpose of paying that interest, the treasurer was, in fact, a trustee, holding the same for the use of and in trust for the complainants; that said commissioners, with others, had instituted such suit in the superior court of Stanly county against their treasurer, but that complainants were not, nor was any other of the bondholders, made a party to such suit, and that, therefore, they were not bound by the decree entered therein. The prayer of the bill was for an accounting, for an injunction restraining the treasurer from paying out or using said fund so in his hands for any other purpose than the settlement of said interest coupons, and for further and general relief. The court below, on reading the verified bill and exhibits filed therewith, granted a restraining order in substance as prayed for, and set the application for an injunction and the appointment of a receiver for hearing on a day mentioned. The defendants below answered said bill, denying the material allegations thereof, and claiming that the bonds so held by the complainants were not only voidable, but absolutely void, for the reasons set forth in the bill that had been so filed in the superior

court of Stanly county. The case was duly matured, and the court below, having considered the same, entered a decree sustaining the validity of the bonds, granting the injunction as prayed for, and appointing a receiver to take charge of the money so in the hands of said treasurer. 89 Fed. 257. From this decree the defendants below sued out this appeal.

The first question raised by the assignments of error is as to the validity or constitutionality of the legislation under which the bonds claimed by the appellees were issued. In the case of Board v. Snuggs, supra, the supreme court of North Carolina held that the bonds issued under the legislation mentioned were not the valid obligations of that county. The reasons given by that court in support of said decision were that the journals of the two houses of the general assembly of that state, for the sessions thereof when chapter 236 of the Acts of North Carolina of 1870-71 and chapter 183 of the Acts of that state for the year 1887 were passed, did not show affirmatively that the yeas and nays, on the second and third readings of the bills, had been entered upon said journals, as required by the constitution of that state; and also that the Code of North Carolina (section 1996), authorizing county commissioners to subscribe stock to a railroad company when necessary to aid in the completion of a railroad, did not include a railroad not begun to be built before the constitution of that state was adopted. And said supreme court also held that it was competent to introduce such journals for the purpose of showing that an act that had been duly enrolled, and approved by the presiding officers of said houses, was not, in fact, passed in the manner required by the constitution of that state; and that, where the journals of the general assembly show that a law authorizing a county to issue railroad-aid bonds was not passed in the manner required by the constitution, the purchasers of the bonds were chargeable with notice of such fact. The special provision of the constitution so referred to is as follows (article 2, § 14):

"No law shall be passed to raise money on the credit of the state, or to pledge the faith of the state, directly or indirectly, for the payment of any debt, or to impose any tax upon the people of the state, or to allow the counties, cities, or towns to do so, unless the bill shall have been read three several times in each house of the general assembly, and passed three several readings, which readings shall have been on three different days, and agreed to by each house, respectively, and unless the yeas and nays on the second and third reading of the bill shall have been entered on the journal."

The people of the state of North Carolina, in their constitution, have expressly limited the power of their legislature relating to taxation, and pointed out the certain indispensable prerequisites that must not only exist as a fact, but also appear on the journals of that legislature in a certain way. The constitution thus, in plain words, clearly indicates the way, and the only way, that the legislature can authorize the counties and the cities of the state to exercise the power of taxation. The entry of the yeas and nays on the last two readings must appear on the journal in order to comply with the requirements of the constitution, and unless they do so appear the bill has not become a law, and the evidence of its nullity is the journal provided by that constitution itself. On this point we quote from the

opinion of the supreme court of North Carolina in Board v. Snuggs, supra, as follows:

"The entry showing who voted on the bill, and how they voted, must be made before the bill can ever become a law. The constitution does not allow the certificate of the presiding officers, or any other power, to cure such an omission. The certificate of these officers will be taken as conclusive of the several readings in ordinary legislation, even if it could be made to appear that the journals were silent in reference thereto, because, in ordinary legislation, the directions of the constitution are not a condition precedent to the validity of the act. But in that class of legislation, the purpose of which is to legislate under section 14 of article 2 of the constitution, a literal compliance with the language of that section is a condition precedent, and one which must be performed in its entirety, before the bill can ever become a law. This point, however, has been so recently and so thoroughly discussed in the case of Union Bank of Richmond v. Commissioners of Town of Oxford, 119 N. C. 214, 25 S. E. 966, that it will be unprofitable to enter into another protracted discussion of it here. The authorities there cited are numerous, and most of them directly in point."

We also quote from the same opinion the following:

"The plaintiffs were allowed to produce copies of the house journal, certified by the secretary of state, to show that the above-mentioned acts were not passed by the general assembly in accordance with the requirements of the constitution. The journal showed that the bill which became chapter 236 of the Laws of 1870–71 was introduced on the 31st of March, 1871, and referred to the committee on internal improvements; that it was reported favorably on the next day, and that on the 3d of April, two days after its introduction, it passed its second and third readings, and that there was no entry of the yeas and nays on either of its readings. From that journal it appears that the bill which was enacted into chapter 183 of the Laws of 1887 passed its second reading on February 26th, and that the yeas and nays were called on that reading and entered on the journal; that the bill passed its third reading on the 28th of February, but that the yeas and nays were not entered on the journal on that reading. We are of the opinion that it was competent to introduce the house journal as proof that the acts referred to were not passed according to the requirements of the constitution, and that they established that fact. That provision of the constitution (article 2, § 14) is mandatory, as we have decided in Union Bank of Richmond v. Commissioners of Town of Oxford, 119 N. C. 214, 25 S. E. 966."

The complainants below insisted that, even if the court should hold that the acts referred to were not passed according to the requirements of the constitution of North Carolina, and that they were therefore void, yet that still the bonds so issued were valid, nevertheless, for the reason that the commissioners of Stanly county had the power to issue the same under the authority of sections 1996, 1997, 1999, and 2000 of the Code of that state; and that, as all the sections of said Code were enacted by having been read three several times in each house of the general assembly, and by having passed three several readings on three different days in either house, and by having the ayes and nays on the second and third readings entered in the respective journals, the action so taken under the provisions of said sections was legal, and the bonds so issued were valid. The court below so held, and the remaining assignments of error relate thereto. Again do we quote and adopt the following portion of the court's opinion in the case of Board v. Snuggs:

"But the defendant, for his protection, presents the view that, even if it be conceded that the acts above referred to were not passed according to the re-

quirements of the constitution, and for that reason might be held void by this court, yet the commissioners of the county had the right to submit the question of subscription. embracing the question of issue of bonds, and the levy of taxes to pay the same, principal and interest, to the voters of the county, and, upon approval by a majority of the qualified voters, to issue the bonds, under sections 1996-2000 of the Code. All the sections of the Code were enacted by having been read three several times in each house of the general assembly. having passed three several readings on three different days in either house, the yeas and nays in the second and third readings having been entered on the journals of the senate and house of representatives, respectively. But did the sections above mentioned give additional and complete authority to order the election, issue the bonds, and levy the taxes to pay them, principal and interest? Section 1996 is in these words: 'The boards of commissioners of the several counties shall have power to subscribe stock to any railroad company or companies, when necessary to aid in the completion of any railroad, in which the citizens of the county may have an interest.' It will be necessary, in order that that section may be construed to give authority to the commissioners to issue the bonds, that the language should include a railroad not begun to be built before the constitution was adopted; that the word 'completion' should be construed 'building' or 'construction,' extending even to the building of a new road; for, in the case before us, it appears that the road had not begun to be built. We cannot see why the word 'completion' should be thought to have been used by the legislators in any other sense than the one most usual and natural. Ordinarily the words 'to complete' are understood to mean 'to finish,' 'to fulfill,' and the word 'completion' to mean the 'finishing' or 'accomplishing in full' of something which has already been commenced; as, for instance, it is most frequent to hear the word 'completion' used in connection with the finishing years and months of the education of the young. * * * The object of the statute must have been to provide, by general act, means by which the counties, without special legislation for each county by separate bills, might be enabled to complete unfinished railroads in which the counties had a pecuniary interest. At the time of the enactment of the statute of 1868-69, and always since that time, any county of the state, duly observing the limitations of section 7, art. 7, of the constitution, and under an act passed according to the requirements of section 14, art. 2, Id., could, and can, subscribe to the capital stock of a railroad company, whether unfinished or to be begun. The act of 1868-69, however, considering the condition of affairs then existing,—that is, that there were counties which had a pecuniary interest in the railroads that had been begun but were unfinished,— enabled such counties to make subscriptions of bonds to complete such unfinished roads at the earliest moment, and with the least cost, by a general law passed according to section 14, art. 2, of the constitution. This reasoning leads us to the still further conclusion that, at the time when the act of 1868-69 was brought forward in Code, § 1996, and the four succeeding sections, it could have had reference to no cases except those where the counties had a pecuniary interest in unfinished railroads at the adoption of the constitution of 1868, and that, therefore, the Code sections could not apply to the present case, because the Yadkin Railroad was not begun to be constructed until about 1889. We have given to the matters embraced in this case a patient and thorough consideration. We are aware of the hardships and losses that may follow from our decision, and we are also aware of the probable complaints likely to be made by persons interested. But the constitutional requirement which we have discussed is clear in its meaning and its language, and it is also mandatory. We must obey it in our interpretation of its meaning. Investors in such securities who may meet with losses have no one to blame but themselves, for the journals of the general assembly are open to public inspection, and the constitution of the state is a part of the public literature." •

The questions raised by this appeal, and the legislation involved with the same, have been directly considered by the supreme court of the state of North Carolina, and the decisions of that court have been against the contention of the complainants below. Union Bank of Richmond v. Commissioners of Town of Oxford, 119 N. C. 214, 25 S.

E. 966; Board v. Snuggs, 121 N. C. 394, 28 S. E. 539; City of Charlotte v. Shepard, 120 N. C. 411, 27 S. E. 109; Rodman v. Town of Washington, 122 N. C. 39, 30 S. E. 118; Board v. Call (N. C.) 31 S. E. 481 (in which case it was also held that sections 1996–2000 of the Code of North Carolina, "authorizing county commissioners to subscribe stock to a railroad company when necessary to aid in the completion of a railroad, do not include a railroad not commenced before the constitution of 1868 was adopted"). With these decisions of the supreme court of North Carolina we are in full accord. If we had reached a different conclusion, nevertheless would not the determination of the court of last resort in North Carolina, upon the questions involved herein, relating as they do to the constitution of that state, and to the validity of certain acts of its general assembly and their construction, be respected by this court? Indeed, are we not bound by them? The supreme court of the United States, in Leeper v. Texas, 139 U. S. 462, 467, 11 Sup. Ct. 577, 579, said:

"It must be regarded as settled that whether statutes of a legislature of a state have been duly enacted in accordance with the requirements of the constitution of such state is not a federal question, and the decision of state courts as to what are the laws of the state is binding upon the courts of the United States. Town of South Ottawa v. Perkins, 94 U. S. 260, 268; Post v. Supervisors, 105 U. S. 667; Norton v. Shelby Co., 118 U. S. 425, 440, 6 Sup. Ct. 1121; Railroad Co. v. Georgia, 98 U. S. 359, 366; Baldwin v. Kansas, 129 U. S. 52, 57, 9 Sup. Ct. 193."

In Post v. Supervisors, 105 U. S. 667, Mr. Justice Gray said:

"* * * Third. The construction uniformly given to the constitution of a state by its highest court is binding on the courts of the United States as a rule of decision. Fourth. An act of the legislature of a state which has been held by its highest court not to be a statute of the state, because never passed as its constitution requires, cannot be held by the courts of the United States, upon the same evidence, to be a law of the state. Fifth. That which is not a law can give no validity to bonds purporting to be issued under it, even in the hands of those who take them for value and in the belief that they have been lawfully issued. It was accordingly held that, the act of the general assembly of Illinois of February 18, 1857, under which the bonds in suit were issued, having been adjudged by the supreme court of that state, in 1870, in the case of Ryan v. Lynch, 68 Ill. 160, and Miller v. Goodwin, 70 Ill. 659, upon proof that the journals did not show it to have been enacted in conformity with the requirements of the constitution, to have never become a law, and to have conferred no power, although referred to in later statutes as an existing law, those decisions must govern the action of the courts of the United States. The weight of those decisions as authoritative exposition of the constitution of the state is not affected by the fact that these plaintiffs were not parties to the suits in which they were delivered. Elmwood Tp. v. Marcy, 92 U. S. 289; East Oakland Tp. v. Skinner, 94 U. S. 255."

The contention of the appellees that there were prior adjudications of the supreme court of North Carolina, inconsistent with the decisions of that court in the cases of Union Bank of Richmond v. Commissioners of Town of Oxford, and Board v. Snuggs, supra, which had become rules of property, and which were overruled by those decisions, is not sustained by an analytical examination of the cases referred to, and in our opinion that court has not, in any of the cases called to our attention, enunciated a doctrine really in conflict with its decisions in the two cases we have last mentioned. It is true' that in some instances the language used by the court is misleading

in its tendencies, and even susceptible of the said construction so placed upon it; but a careful consideration of the cases, and of the facts to which they relate, forces the conclusion that the court had no intention of including within the purview of its judgment bills of the character of those embraced by the provisions of section 14, art. 2, of the constitution of the state of North Carolina. In Carr v. Coke, 116 N. C. 223, 22 S. E. 16, the supreme court held that the certificate of the presiding officers is conclusive that the bill has passed, but that case does not decide that such certificate is proof that the yeas and nays were entered upon the journal. That question was not then before the court, and that decision should be considered in the light of the facts under which it was written. In Brodnax v. Groom, 64 N. C. 244, the matter discussed and decided had reference to section 12, art. 2, of the constitution, which is in the following words:

"The general assembly shall not pass any private law, unless it shall be made to appear thirty days' notice of application to pass such a law shall have been given, under such direction and in such manner as shall be provided by law."

The question was whether the courts would go behind the signatures of the presiding officers in order to ascertain if certain preliminary matters had been complied with, and the result reached was that the courts would presume that the legislature had ascertained that the notice required had been given, and that the certificate of the presiding officers must be regarded as conclusive of the subject. The case of State v. Robinson, 81 N. C. 409, relates to section 23, art. 2, of the constitution, which reads as follows:

"All bills and resolutions of a legislative nature shall be read three times in each house before they pass into laws, and shall be signed by the presiding officers of both houses."

The question was if the proper construction of said section would admit of the enforcement, as a law, of a bill which had passed both houses of the general assembly, but had not been signed by the presiding officers. The decision was that such a bill was incurably defective. In State v. Patterson, 98 N. C. 660, 4 S. E. 350, the supreme court construed article 2, § 21, which is as follows: "The style of the acts shall be, 'The general assembly of North Carolina do enact.'" Judge Merrimon, in delivering the opinion of the court, said:

"More particularly, for the present purpose, when the constitution prescribes and directs, in terms or by necessary implication, that a particular power shall be exercised in a specified way, or a particular thing shall be done by a particular co-ordinate branch of government (as the legislature), or by a particular officer or class of officers, and prescribes the way and manner of doing it, such direction cannot be disregarded. A due observance of it is essential, because the constitution so provides, and its provisions are not in vain or of trifling moment. It is not the nature of constitutions of government to provide nonessentials,—useless, unimportant details, such as may be disregarded and dispensed with. As we have said, they are organic, made upon solemn consideration by the sovereign authority, and contain general, essential provisions. Details are avoided in them unless deemed important,—essential. Nonessential details are left in the discretion of those who exercise and administer the powers of government. If this were not so, why prescribe the way and manner? Why not leave these things to convenience and the authority charged with the exercise of the power? Why direct them? Why restrict them? And if such directions may be disregarded, ignored, suspended in some

respects, then to what extent, and in what respect? If one co-ordinate branch of the government, or any class of officers, may do so, why may not another, and all, as to duties devolved upon them, respectively, directly by the constitution? The answer to these and like questions must be that requirements of the constitution shall prevail and be observed; and when it prescribes that a particular act or thing shall be done in a way and manner specified, such direction must be treated as a command, and an observance of it essential to the effectiveness of the act or thing to be done. Such act cannot be complete, such thing is not effectual, until done in the way and manner so prescribed."

This case was decided December 5, 1887, and indicated clearly the absolute necessity of a strict observance of all the requirements of the constitution in the matter of the enactment of laws, and is in entire harmony with the later decisions of that court, now the subject of criticism by counsel in connection with the questions under consideration. In this connection, it is well to keep in mind the fact that the bonds held by the complainant below were not issued until after July 1, 1890. The case of Field v. Clark, 143 U. S. 649, 12 Sup. Ct. 495, is not in conflict with the conclusion we reach. The particular subject we dispose of was specially pretermitted by the court in that case as follows:

"In regard to certain matters, the constitution expressly requires that they shall be entered on the journal. To what extent the validity of legislative action may be affected by the failure to have those matters entered on the journal we need not inquire; no such question is presented for determination. But it is clear that, in respect to the particular mode in which, or with what fullness, shall be kept the proceedings of either house relating to matters not expressly required to be entered on the journal, * * * these and like matters were left to the discretion of the respective houses of congress."

The court below held that the legislation relating to the Yadkin Railroad Company, under which the election authorizing the bonds to be issued was held, was invalid, because the requirements of the constitution of North Carolina as to entering the yeas and nays on the journal were not complied with. In this we agree with that court. But it is also held that, under sections 1996–2000 of the Code of North Carolina, the county commissioners had the power to subscribe for and issue the bonds, notwithstanding the fact that the proposed railroad had not then been begun, and though the citizens of the county had not any direct interest in it. This ruling of the court below is opposed to the construction put upon those sections of the North Carolina Code by the supreme court of that state, and, considering the facts connected with this controversy, we take the construction of that court as the ruling to be followed by us at this time. The decree appealed from is reversed, and this cause is remanded, with directions to dissolve the injunction, discharge the receiver, and dismiss the bill.