PAUL STAM, JR., AND WIFE, DOROTHY MILLS STAM v. JAMES B. HUNT, JR., INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF NORTH CAROLINA AND DIRECTOR OF THE BUDGET; JOHN A. WILLIAMS, JR., INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS STATE BUDGET OFFICER; GEORGE LAMBERT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS STATE DISBURSING OFFICER; RUFUS EDMISTEN, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA; SARA MORROW, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HUMAN RESOURCES OF THE STATE OF NORTH CAROLINA; JOHN SYRIA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE DIVISION OF SOCIAL SERVICES OF THE DEPARTMENT OF HUMAN RESOURCES OF THE STATE OF NORTH CAROLINA; THE STATE OF NORTH CAROLINA; THE NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES

No. 8310SC55

(Filed 17 January 1984)

Statutes § 1— action seeking injunction against expenditures for abortions — summary judgment proper

The trial court properly granted summary judgment in favor of defendants in an action brought by plaintiffs seeking to declare unlawful any expendi-

tures in excess of $1 million for abortions during fiscal year 1982-83 and an injunction against such expenditures since the June 1982 appropriations act, on its face, shows that it was signed by both the President of the Senate and the Speaker of the House of Representatives; these presiding officers expressly indicated in the act that it was read three times in the General Assembly and ratified on 22 June 1982; the certified State budget for the Department of Human Resources shows, on its face, that an additional $374,500.00 was appropriated to the State Abortion Fund for fiscal year 1982-83; and according to the law set out in *Carr v. Coke*, 116 N.C. 223 (1895), the ratified appropriation act and certified State budget are complete and unimpeachable. They cannot be altered by the affidavit of any legislator or taxpayer or the House and Senate journals. The courts also possess no power to inquire into the intentions of the Legislature when ratifying an act.

APPEAL by plaintiffs from *Bailey, Judge.* Order entered 22 December 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 6 December 1983.

Plaintiff taxpayers initiated this action against the State of North Carolina, the North Carolina Department of Human Resources and various State officials. They alleged in their complaint that the North Carolina General Assembly appropriated no more than $1,000,000 for the State Abortion Fund for fiscal year 1982-83; and that any expenditure by defendants in excess of this sum violated certain provisions of the Constitution, Session Laws, General Statutes and Administrative Rules of North Carolina. They sought a judgment declaring unlawful any expenditures in excess of $1,000,000 for abortions during fiscal year 1982-83 and an injunction against such expenditures.

The State Abortion Fund consists of funding for medically unnecessary abortions for indigent women. Our Court upheld the lawfulness of this Fund in *Stam v. State*, 47 N.C. App. 209, 267 S.E. 2d 335 (1980), *reversed in part on other grounds*, 302 N.C. 357, 275 S.E. 2d 439 (1981).

In their answer to plaintiffs' complaint, defendants alleged that the North Carolina General Assembly duly and lawfully appropriated $1,374,500 for the State Abortion Fund for fiscal year 1982-83; and that this figure was provided to the State Budget Office by the General Assembly and is set out in the certified State budget for fiscal year 1982-83. Defendants further alleged that this appropriations act and certified budget are conclusive, irrebuttable and unimpeachable evidence of the General Assem-

bly's appropriation of $1,374,500 for the State Abortion Fund during fiscal year 1982-83.

On 6 December 1982, defendants moved for summary judgment. Based upon the pleadings, various legislative documents and supporting affidavits, the trial court granted summary judgment in defendants' favor.

*Plaintiff appellants pro se.*

*Attorney General Edmisten, by Assistant Attorney General Steven Mansfield Shaber, for the State of North Carolina, appellee.*

ARNOLD, Judge.

Plaintiffs assign error to the entry of summary judgment in defendants' favor. They argue that the uncontradicted evidence shows that the Governor formally requested the General Assembly to appropriate $1,000,000 for the State Abortion Fund; and that the General Assembly never reduced or increased this proposed appropriation before enacting the appropriation act in question. We believe that the evidence and prevailing law instead entitle defendants to judgment in their favor.

The uncontradicted evidence shows that in 1981 Governor Hunt submitted the State budget to the General Assembly for the 1981-82 biennium, pursuant to G.S. 143-11. Therein he requested $1,000,000 for the State Abortion Fund for each year of the biennium. The 1981 General Assembly appropriated $64,280,031 to the Department of Human Resources, Division of Social Services for fiscal year 1981-82 and $61,686,277 for fiscal year 1982-83. Each appropriation to the Division of Social Services included $1,000,000 for the State Abortion Fund.

In June 1982, the General Assembly returned to Raleigh for a "short session" to consider a supplemental appropriations bill for fiscal year 1982-83. In the appropriations act ratified during this session on 22 June 1982 the funds to the Division of Social Services were increased from $61,686,277 to $63,733,294. The certified budget for the Department of Human Resources, Division of Social Services, breaks down this appropriation into line items and shows that $374,500 was appropriated to Abortion Services for fiscal year 1982-83.

In support of their motion for summary judgment, defendants filed affidavits of a member of the General Assembly's Fiscal Research Division, the State Budget Officer and a member of his staff. These affidavits, along with the ratified appropriation act and certified budget of the Department of Human Resources conclusively show that the 1982-83 increase in funding to the Department of Social Services included a $374,500 increase to the Abortion Fund.

Robert Daughtry, a fiscal analyst and member of the Fiscal Research Division, swore that his duties "include the responsibility of record-changes affecting the Department of Human Resources made in the proposed State budget by the General Assembly in the course of its annual action on the appropriations act." He swore that this information was available to members of the General Assembly during deliberation of the appropriations act. Daughtry further swore:

　　3. On or prior to June 12, 1982, I recorded the addition of $374,500.00 to the appropriation for the Department of Human Resources, Division of Social Services, to annualize the base budget for the State Abortion Fund for F.Y. 1982-83. This change was one of several changes in the budget for the Division which increased its total appropriation for F.Y. 1982-83 from $61,686,277.00 (as shown in Chapter 859 of the 1981 Session Laws) to House Bill 61, later ratified as Chapter 1282 of the 1981 Session Laws.) This change was recorded by me approximately ten days before the General Assembly passed and ratified Chapter 1282.

John A. Williams, Jr., State Budget Officer, swore that one of his duties was to certify the State budget to the various State departments and agencies. He swore that information given to his staff by the Fiscal Research Division shows that the increased appropriation for the Division of Social Services during the June 1982 "short session" included an increase of $374,500 for the State Abortion Fund.

In response to defendants' motion for summary judgment, plaintiffs filed two affidavits. Plaintiff Paul Stam, Jr. swore that Daughtry had informed him that he had received a copy of a 10 June 1982 letter written to a member of the House of Representatives by the Secretary of the Department of Human Resources;

and that this letter and subsequent conversations with the representative were the sole reason for Daughtry's adding $374,500 to the State Abortion Fund.

Ralph Edwards, a member of the House of Representatives, swore that he was present in the House during the discussion of the appropriations bill in June 1982. He swore that during the discussion of this bill, the Chairman of the Expansion Budget Committee was asked if there was an increase in the amount appropriated for the State Abortion Fund and that he responded "no."

Plaintiffs would now have us go behind the ratification of this appropriations act and certified State budget to determine whether an increase in the State Abortion Fund was intended by the General Assembly and whether the proper procedure for ratification was carried out. The law of this State does not allow such an examination.

In 1895 our Supreme Court was confronted with the question of whether it, as a coordinate branch of the government, could look behind the record of a duly ratified act and investigate the manner in which the record was established by the Legislature. *Carr v. Coke*, 116 N.C. 223, 22 S.E. 16 (1895). The act in question purported to make void as to existing creditors all security interests in the State. The plaintiff alleged that the Journals of both Houses showed that the bill had not been read three times as required by the Constitution. Instead the bill was fraudulently enrolled and mistakenly signed by the President of the Senate and Speaker of the House of Representatives, and certified to the Secretary of State. The trial court dismissed the action noting that it could not go behind the ratification of the act as it appeared in the Office of the Secretary of State.

The Supreme Court affirmed the dismissal noting that any remedy to remove the act as law would have to come from the legislative branch. The Court emphasized, "[I]f we can open the door and permit every act of the Legislature to be inquired into, behind the record, for any of the causes alleged in the complaint, then the State will be plagued with all the evils of a veritable Pandora's box." *Id.* at 233, 22 S.E. at 17. In his concurring opinion Justice Montgomery wrote:

The question at issue brought to the light the more than possibilities of two most serious menaces to popular government. The first one, that of the power of a corruptible or incompetent clerical force or that of a depraved and hired set of lobbyists, or both together, to tamper with the acts and proceedings of the Legislature and have that certified to be law which was never in fact enacted; the second, that of the power of defeated and unscrupulous politicians, when stung by loss of office or a desire for revenge on their political enemies, to practically repeal the legislation of their successful opponents by resorts to the courts upon mere allegations that there was fraud in the passage of the acts or in their ratification, and by procuring injunctions upon affidavits obtained possibly through bribery or through the ignorance of carelessness of the oath-maker. By the decision of the Court the latter danger, the far most to be dreaded, is avoided.

*Id.* at 241, 22 S.E. at 19.

The June 1982 appropriations act, on its face, shows that it was signed by both the President of the Senate and Speaker of the House of Representatives. These presiding officers expressly indicated in the act that it was read three times in the General Assembly and ratified on 22 June 1982. The certified state budget for the Department of Human Resources shows, on its face, that an additional $374,500 was appropriated to the State Abortion Fund for fiscal year 1982-83. According to the law set out in *Carr v. Coke*, the ratified appropriation act and certified state budget are complete and unimpeachable. They cannot be altered by the affidavit of any legislator or taxpayer or the House and Senate Journals. The courts also possess no power to inquire into the intentions of the legislators when ratifying an act.

It must be presumed that they knew what they were doing and that they meant to do what they did. The act was perfectly regular on its face, had passed its several readings and was duly ratified, and no proof as to mistake or error can now be heard in this Court to contradict its provisions.

*Russell v. Ayers*, 120 N.C. 180, 187, 27 S.E. 3d 133, 134 (1897).

In light of our ruling on plaintiffs' first assignment of error, we find it unnecessary to discuss plaintiffs' remaining arguments.

Summary judgment in defendants' favor is

Affirmed.

Judges JOHNSON and PHILLIPS concur.